CASE and others, Appellants, vs. JAMES, Garnishee, Respondent.

*April 25 — May 15, 1895.*

VOLUNTARY ASSIGNMENT: (1) *Bond of assignee: How sureties may testify to responsibility.* (2) *Preferences by unauthorized act of assignee.* (3) *Secret fraudulent motive.*

1. Under sec. 1694, R. S., providing that the sureties upon an assignee's bond "shall each testify to his responsibility and by their several affidavits satisfy the officer taking such bond," etc., the sureties need not testify orally before the officer, but may do so through their affidavits.

2. An assignment is not void because an unauthorized action of the assignee under it results in giving unlawful preferences to creditors. Thus, if the assignee surrenders to mortgagees property covered by chattel mortgages which are void as to creditors, the assignment is not invalidated thereby, but the creditors' remedy would seem to be by a proceeding under sec. 1693b, S. & B. Ann. Stats., to set aside the mortgages.

3. An assignment according to law, providing for a *pro rata* division of all the assignor's property among all his creditors impartially and with no delay in administration, cannot be held void because a secret fraudulent motive may have prompted the making thereof.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed.*

This is an appeal from a judgment of the county court of Waukesha county in favor of the garnishee.

T. Haynes & Son were a copartnership in business at Waukesha. On the 2d day of December, 1893, there were two mortgages upon parts of their stock in trade. One mortgage was to Wells, Nellegar & Co., for $307.23, upon nine bicycles, each particularly described. They had sold one of the bicycles and used the money. On that day they gave a new mortgage upon another bicycle in place of the one which had been sold. There was also a mortgage in favor of W. A. Nickell for $1,000 on certain buggies, par-

ticularly described.   These they had been  permitted to sell from, from time to time, and to use some of the proceeds to replace those sold and for other of their own purposes, and they had filed no verified statement of such sales in the town clerk's office.

On this 2d day of December, 1893, and after the new mortgage had been given to Wells, Nellegar & Co., Mr. Ryan, of the law firm of Ryan & Merton, came to their place of business, and notified them that his firm had received a claim of $500 against them, with instructions either to collect it or have it secured.   They failed, after trial, to get either money or security.   So they determined to make an assignment for the benefit of their creditors.   They assigned to *Mr. Arthur W. James,* the garnishee.   Before executing the assignment, they selected, from their stock of goods, goods of the value of about $400, intended for their exemptions of $200 each.   The assignee afterwards delivered to W. A. Nickell all the property covered by his chattel mortgage; to a party representing Wells, Nellegar & Co. the property covered by its mortgage; and to the assignors the property which they had selected for their exemptions.

The assignee, before taking possession of the property, executed a bond to the clerk of the circuit court, with two sureties.   The sureties made affidavit to their responsibility, in sufficient form, before a notary public, but did not appear before the court commissioner to whom the bond was delivered.   The court commissioner certified upon the bond, among other things required to appear, that " the sureties upon said bond by their several affidavits satisfied me that the property of said sureties, being within this state, is worth," etc., and approved the bond, and filed it in the office of the clerk of the circuit court.

The plaintiffs at once commenced their action against Haynes & Son, and garnished the assignee.   The action was tried before a jury.   At the close of the testimony, the court

discharged the jury, and made and filed a finding in favor of the garnishee. From a judgment on such finding the plaintiffs appeal. .

For the appellants there was a brief by *Ryan & Merton*, and oral argument by *E. Merton*.

For the respondent there was a brief by *C. E. Armin* and *V. H. Tichenor*, and oral argument by *Mr. Tichenor*.

NEWMAN, J. The plaintiffs allege four grounds of error: (1) The court erred in holding that the assignment papers were valid or sufficient in form and substance under the law. (2) The court erred in holding this assignment valid, for by it preferences were given to creditors. (3) The court erred in taking the case away from the jury and deciding the question of fraudulent intent itself. (4) The court erred in refusing to set aside its judgment and grant a new trial herein.

1. The first ground of error relates to the manner and form in which the justification of the sureties upon the assignee's bond was taken. It is claimed by the plaintiffs that it is required that the sureties testify orally to their responsibility before the court commissioner who is to approve the bond. The statute requires a bond " with two or more sufficient sureties, freeholders of this state, who shall each testify to his responsibility, and by their several affidavits satisfy the officer taking such bond." R. S. sec. 1694. Each surety is required to " testify" to his responsibility. What does the word " testify" mean? As defined by Webster's dictionary, it is " to make a solemn declaration, verbal or written, to establish some fact." Witnesses testify orally or by written affidavits or depositions. The word " testify" signifies the giving of testimony, whether orally or in writing. These sureties, then, did literally testify before the court commissioner through their affidavits; and, if their affidavits satisfied the officer of their responsibility, the en-

tire statute, to its utmost provision in this regard, was liter-
ally satisfied. The express provision that they were to
satisfy the officer "by their several affidavits" would seem
to indicate quite clearly that they were to testify to the
officer through their affidavits. It is not a question of strict
or liberal construction, but of what the words mean, "ac-
cording to the common and approved usage of the language."

2. It is urged that the assignment is void, because "by it
preferences were given to creditors." This is not intended
to say that the assignment itself gave preference to any
creditor. It was entirely innocent of any provision having
that effect or purpose. But what is meant is that by the
action of the assignee in surrendering to Nickell and to
Wells, Nellegar & Co. the property included in their mort-
gages, unlawful preferences were in effect given. But it
would seem that, if true, that could not well relate back to
the assignment so as to render it void. It is rather an un-
authorized action of the assignee under the assignment than
a defect in the assignment itself. If these mortgages were
in fact invalid as against other creditors of the mortgagors,
the assignment did not authorize the assignee to surrender
them. That act was wholly apart from the assignment and
its provisions and purpose. The assignee represents cred-
itors as well as the assignors. The rights of the parties are
to be worked out through him. His action is always sub-
ject to the supervision and direction of the circuit court, to
which either party may apply for direction in any doubtful
or disputed matter. R. S. sec. 1693. Instead of seeking the
direction of the court, it is said that the assignee followed
the advice of the attorneys of the mortgagee. Perhaps he
was wrong in what he did, but that does not impeach the
assignment itself. The remedy of the creditor would seem
to be under S. & B. Ann. Stats. sec. 1693b. *Batten v. Smith,*
62 Wis. 92; *Lawson v. Stacy,* 82 Wis. 303. These mortgages
were executed before the assignment. If they were void,
it was because they were made with intent to hinder and

delay creditors.  *Blakeslee v. Rossman*, 43 Wis. 116; *Anderson v. Patterson*, 64 Wis. 557; *Merchants' & M. Sav. Bank v. Lovejoy*, 84 Wis. 601, 611, 612.  The act of the mortgagees in taking possession under such invalid mortgages gives them no valid title.  *Blakeslee v. Rossman, supra.*  It would seem that the remedy given by the statute referred to is appropriate and ample.

It is claimed, indeed, that this very appropriation of the mortgaged goods was the secret motive and purpose of the assignment.  This is not very clearly shown, nor is it a very cogent inference from the testimony.  Nor is it shown that the assignee was a party to such collusion, if such existed.  But it is not obvious how an assignment which provides for a *pro rata* division of all the debtor's goods among all his creditors impartially, and providing for no delay in administration, can be held void on account of whatever motive may have prompted the making.  The words of the instrument govern.  It is that disposition of the debtor's property which the law prefers and favors.  The assignee is bound by the instrument as written.  It may hinder some pressing creditor from acquiring a preference through the process of the courts.  But that, under such circumstances, cannot be deemed a fraudulent hindering of such creditor; for it makes effectual the purpose of the law, by providing a fair distribution of all the debtor's property among all his creditors.  Since preferences have been forbidden and the assignee has become a trustee for the creditors, the courts look upon voluntary assignments with less of suspicion and more of favor than formerly, when preferences were allowed and the assignee represented only the assignor. *Batten v. Smith*, 62 Wis. 92.

3. It was not error to take the case from the jury.  There was no material question of fact in dispute upon the testimony.

4. There was no error in refusing a new trial.

*By the Court.*— The judgment of the county court of Waukesha county is affirmed.