CASE 56.—PERSONAL INJURY ACTION BY MRS. FRANK
OVERFIELD AGAINST THE CUMBERLAND TELE-
PHONE & TELEGRAPH COMPANY.—December 13.

# Cumberland Tel'p & Tel'g Co. v. Overfield

Appeal from Henderson Circuit Court.

J. W. HENSON, Circuit Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1. Trial—Reception of Evidence—Order of Proof—Plaintiff—
   Deposition.—Civil Code Prac., section 606, subdivision 3, de-
   claring that no person shall testify for himself in chief in
   an ordinary action after introducing other testimony for
   himself in chief, nor in an equitable action after taking
   other testimony for himself in chief, did not prohibit the
   reading of plaintiff's deposition after several witnesses had
   testified for her in chief, where her deposition was taken
   before such witnesses testified.
2. Same—Instructions—Assumption of Fact.—An instruction to
   find for defendant telephone company, unless, while plaintiff
   was driving along the road, she came in contact with a wire
   belonging to defendant, and which defendant had negligently
   permitted, if it had done so, to hang over and near the
   roadbed, and obstruct the travel thereon, did not assume
   that defendant telephone company "negligently permitted"
   its wire to hang over the road and obstruct public travel.
3. Damages — Pleading — General Damages. — General damages
   need not be averred, being such as the law presumes to have
   accrued from the wrong.
4. Same.—A petition in a personal injury action, alleging that
   plaintiff was thrown with great force from her buggy, ren-
   dering her unconscious, severely injuring her head and neck,
   wrenching and spraining her spine, bruising, spraining, and
   laming her right leg and arm, cutting and bruising painfully
   her face, and causing great internal injury and physical and

Cumberland Tel'p & Tel'g Co. v. Overfield.

mental shock, and that she was permanently disabled and her health permanently impaired, was sufficient to authorize a recovery for a permanent reduction in power to earn money; it being a necessary incident of permanent disability.

5. Same—Evidence—Sufficiency—Impairment of Earning Capacity.—In a personal injury action, evidence that prior to the accident plaintiff was in good health and had done the cooking, washing, ironing, and general housework for a large family, and that thereafter she was unable to perform any of those duties, authorized a recovery for permanent reduction in power to earn money, the extent thereof to be determined by the jury from their common knowledge and experience.

6. Appeal—Review—Harmless Error—Instructions.—In a personal injury action, defendant contended that error in instructing to find "also a reasonable compensation for the time she has lost from her business, if any, by reason thereof," was not cured by erasing those words from the instruction, after the conclusion of the argument and just as the jury was retiring. It did not appear that defendant asked permission to reargue the case, and the court not only erased the objectionable words, but admonished the jury to disregard them. Held, That defendant was not in any way prejudiced.

7. Evidence—Opinion Evidence—Subjects of Expert Testimony —Permanency of Injuries.—In a personal injury action, the permanency of injuries shown may be proved by the opinion of a physician.

8. Damages — Evidence — Sufficiency — Personal Injuries.— Evidence, in a personal injury action, held to justify a finding both as to the character of plaintiff's injuries and the cause thereof in accordance with her contention.

9. Same—Excessive.—After the accident, plaintiff was up a few times, but finally went to bed, and was thereafter confined to her room. She suffered a great deal. The accident produced a concussion of the brain and spinal cord, and a functional derangement of the bladder, and she was partially paralyzed in her right leg and arm, and at the time of the trial, more than a year after the accident, she was in a helpless condition, and her injuries were permanent. Held, That a verdict of $7,500 was not so excessive as to justify a reversal.

YEAMAN & YEAMAN for appellant.

Cumberland Tel p & Tel'g Co. v. Overfield.

W. L. GRANBERRY of counsel.

POINTS AND AUTHORITIES.

1. Plaintiff having the burden, her testimony should have been first presented to the jury, and not after eight or ten of her other witnesses had testified in chief. (Civil Code, section 606, sub-section 3; Am., etc., Co. v. Bayless, 91 Ky., 103; Barkley v. Bradford, etc., 100 Ky., 306; L. & N. v. Lucas' Admr., 98 S. W. 308, 30 Ky. Law Rep. 359.)

2. Instruction No. 1 assumes that the defendant "negligently permitted" its wires to hang over the public road.

3. The instruction to find for the plaintiff "for any permanent reduction in her power to earn money" was error, there being no averment or proof justifying it. (E Chit. Pl., 308; Newman Pl. & Pr., 507; So. Covington v. Ware, 84 Ky., 267; L. & N. v. Mason, 24 Ky. Law Rep. 1623, 72 S. W. 28; Jesse v. Shuck, 11 Ky. Law Rep., 463; L. & N. v. Reynolds, 24 Ky. Law Rep. 1402, 71 S. W. 516; Barries v. L. E. L. Co., 25 Ky. Law Rep. 203, 80 S. W. 814; C. & N. Ry. Co. v. Hammer, 23 Ky. Law Rep. 1846, 66 S. W. 375; I. C. Ry. Co. v. Hanberry, 23 Ky. Law Rep. 1867, 66 S. W. 417.)

4. The error in instructing the jury to find "also a reasonable compensation for the time she has lost from her business, if any, by reason thereof," was not cured by erasing those words from tue instruction after the conclusion of the argument on both sides, and just as the jury was retiring to consider their verdict. (Civil Code, section 317, sub-section 5.)

In the cases of Powers v. Comth., 22 Ky. L. R. 1807, 61 S. W. 735; Scott v. Comth for etc., 93 S. W. 669-70, 29 Ky. Law Rep., 776, ample opportunity was afforded counsel on both sides to discuss the instructions as finally corrected.

5. A verdict for $7,500 for personal injury caused by being thrown from a buggy, with no proof of its permanency, and no evidence or instruction authorizing punitive damages, is flagrantly excessive. (Railroad Co. v. Monogue, 90 Ky. 369, 12 Ky. Law Rep. 378, 14 S. W. 357; L. & N. v. Long, 94 Ky. 415, 15 Ky. Law Rep. 199, 22 S. W. 747.)

N. POWELL TAYLOR for appellee.

QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. That it was not error to permit plaintiff to read deposition of plaintiff after introducing other witnesses for plaintiff. It was

not violative of the "rule of practice," nor prejudicial to the substantial rights of defendant. (Civil Code, section 606, sub-section 3; Am. & Eng. Ency. of Law; vol. 13, p. 3, Bouvier's Dict.; Am. Wire Nail Co. v. Bayless, 91 Ky., 103; Barkley v. Bradford, 100 Ky., 106; L. & N. R. R. Co. v. Lucas' Admr., Ky. Dec., 98 S. W., 308.)

2. That the first instruction did not "assume that the defendant had negligently permitted its wire to hang over the road." (Powers v. Comth., 22 Ky. Law Rep., 1812.)

3. Under an allegation of permanent injury, and permanent impairment of plaintiff's health, an instruction "for any permanent reduction in power to earn money" is proper without a specific averment. That general damages need not be specifically alleged. (So. Cov. & Cin. St. Ry. Co. v. Bolt, etc., 22 Ky. Law Rep., 906; Alexander v. Humber, 8 Ky. Law Rep., 619; Brown v. Ry. Co., 99 Mo., 310; Cyc. 13, p. 183; Maxwell on Code Pleadings, p. 79;; Bradbury v. Benton, 69 Me., 109; Wat. Per. Injuries, pp. 383, 639, 642, 818 and 819; 28 S. W., 110; 39 S. W., 638; 37 S. W., 771; 88 Ga., 647.)

4. That appellee, though not a "money earner," was entitled to compensation for any permanent reduction in her power to earn money in the future. (Lex. Ry. Co. v. Herring, Ky. Dec., 96 S. W., 562; So. Cov. St. Ry. Co. v. Core, Ky. Dec., 96 S. W., 564; Sutherland on Damages, vol. 3, section 1251.)

5. That it is not error for the trial court to withdraw any objectionable matter from an instruction, under proper admonition, after argument, and before final submission to the jury. That it is the right and the duty of the court to so amend its instructions as to correctly state the law. (Scott v Fidelity Co., 93 S. W., 669-670; Powers v. Comth., 22 Ky. Law Rep., 1807; 61 S. W., 735.)

6. That the physician who treated the plaintiff may give in evidence his opinion as to the permanency of her injuries. (Wat. Per. Inj., p. 604; Elliott on Evidence, vol. 3, section 1988.)

7. That the physician who was called to treat plaintiff, before suit was brought, may upon the trial give his opinion as to whether plaintiff's condition resulted from the injuries described to him by plaintiff. (24 Am. St. Rep., 194; Omberg v. U. S. M. A., 101 Ky., 303; Freeman v. Mer. Mut. Acc. Assn., 156 Mass., 351; Dabbart Case, vol. 4, 366, Biglow's Life and Acc. Ins. Rep.)

8. This court will not disturb the verdict of a properly instructed jury unless the verdict is so palpably and glaringly excessive or contrary to the evidence, as at first blush to indicate it was inspired by passion or prejudice. (23 Ky. Law Rep., 2343. Ky. Dec.; 92 S. W., 9, Ky. Dec.; 96 S. W., 560.)

9. That the verdict of $7,500 was not excessive; that it is abundantly supported by the evidence, and was not inspired by passion or prejudice. (C. O. Ry. Co. v. Davis, 22 Ky. Law Rep., 748—$10,000; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327—$10,000; City of Louisville v. Keber, 25 Ky. Law Rep., 2004—$7,500; L. & N. R. R. Co. v. McEwan, 21 Ky. Law Rep., 487—$12,000; City of Louisville v. Bailey, 25 Ky. Law Rep., 6—$7,000; Cleveland St. R. Co. v. Miller (Ind.), 74 N. E., 509—$7,500; Galveston H. & S. Ry. Co. v. Vollroth (Tex.), 89 S. W., 279—$14,000; Mo., K. & T. Ry. Co. v. Nail (Tex.), 58 S. W., 165—$8,430; Wilmette v. Brackle (Ill.), 71 N. E., 41—$8,500; City of Chicago v. Bush, 3 Ill., 638—$7,500; Bourland Co. v. Graham, 89 N. Y. S., 595— $9,000; Kansas City v. O'Neil (Mo.), 77 S. W. 64—$7,500; Pittsburg, C., C. & St. L. Ry. Co. v. Banfill (Ill.), 69 N. E., 177 (1903)— $20,000; City of Spokane v. Durham (Wash.), 68 P., 383—$12,000; Brocklyn Heights R. Co. v. Leonard, 67 N. Y. S., 985—$12,000; Chitty v. St. Louis, I. M. & S. Ry. Co. (Mo.), 65 S. W., 959— $10,000; Central Tex. & N. M. Ry. Co. v. Gibson, 83 S. W. 862— $8,800; Alabama So. Ry. Co. v. Crowder, 130 Ala., 256—$15,000; Goldsmith v. Holland Bldg. Co. (Mo.), 81 S. W., 1112—$8,500; Chicago & W. I. R. R. Co. v. Doan, 93 Ill. App., 247—$8,500.)

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

Appellant, Cumberland Telephone & Telegraph Company, owned and operated a telephone line along the Dixon and Henderson road, in Henderson county, Ky. The wire at the place of the accident which will be hereinafter described was attached to the limb of a tree on one side of the road, and to a fence post on the other, and hung so low as not to permit a buggy with a top to pass under it. This condition of the wire was known to appellant for some time prior to the accident to appellee. On December 7, 1905, appellee was driving a gentle horse along the road, when her buggy came in contact with the wire. The horse became frightened, and, after rearing and plunging several times, finally ran away. The wire cut through the bed of the buggy below the seat, and

hurled the top of the buggy and appellee to the ground, inflicting upon her certain injuries which will be hereafter discussed.

On April 1, 1906, appellee instituted this action to recover of appellant damages for her injuries. The first trial took place in September, 1906, and resulted in a hung jury. The second trial, which occurred in February, 1907, resulted in a verdict for appellee in the sum of $7,500. A new trial was refused, and the Cumberland Telephone & Telegraph Company is here on appeal with the following assignment of errors: (1) The court erred in permitting the deposition of appellee, plaintiff below, to be read to the jury after several witnesses had testified for her in chief. (2) Instruction No. 1 assumes that appellant, defendant below, "negligently permitted" its wire to hang over the road and obstruct public travel thereon. (3) The instruction to find for appellee "for any permanent reduction in her power to earn money" was error, as there was no averment nor proof justifying it. (4) The error in instructing the jury to find "also a reasonable compensation for the time she has lost from her business, if any, by reason thereof." was not cured by erasing those words from the instruction after the conclusion of the arguments on both sides. and just before the jury retired. (5) A verdict for $7,500 for personal injury, caused by being thrown from a buggy, with no proof of its permanency, and no evidence nor instruction authorizing punitive damages, is flagrantly excessive.

These alleged errors will be considered in their order.

1. It appears that the deposition of appellee taken on September 1, 1906, was read in evidence over the objection of appellant, after some eight or nine wit-

nesses had previously testified for her in chief. Appellant contends that subsection 3 of section 606 of the Civil Code of Practice prohibits such practice. That provision is as follows: "No person shall testify for himself in chief in an ordinary action after introducing other testimony for himself in chief, nor in an equitable action, after taking other testimony for himself in chief." The manifest object of this provision was to prevent a party to a suit from sitting by and hearing his own witnesses, and then taking the stand in his own behalf and supplying the deficiencies in their testimony. This section of the Code should be interpreted in the light of the purpose for which it was enacted. To testify is to make a solemn declaration on oath or affirmation, for the purpose of establishing or making proof of some fact (Nash. v. Hoxie, 59 Wis. 388, 18 N. W. 408), and it signifies the giving of testimony whether orally or in writing (Case v. James, 90 Wis. 320, 63 N. W. 237). In this sense it is used in the above section of the Code, for it provides that a party shall not testify for himself in chief in an equitable action, where testimony is usually taken by deposition, after taking other testimony for himself in chief. We are therefore of the opinion that, so far as this provision of the Code is concerned, a party who testifies by deposition testifies when he is sworn and deposes, and not when the deposition is read. All that is necessary then is for a party to give his deposition before his other witnesses testify in chief, either orally or by deposition. As appellee's deposition was the only one used by her, and as it was taken long before her other witnesses testified for her in chief, it was entirely proper, under the circumstances, to permit it to be read to the jury.

2. Appellant contends that instruction No. 1 assumes that appellant "negligently permitted" its wire to hang over the road and obstruct public travel. This instruction is as follows: "The court instructs you to find for the defendant, unless you shall believe from the evidence that while plaintiff was driving along the public road at the time and place mentioned, and while she was exercising ordinary care for her own safety, if she was so, she, the plaintiff, came in contact with a line of wire belonging to or under the control of the defendant, and which defendant or its agent in charge of said line had negligently permitted, if it had done so, to hang over and near the roadbed, and obstruct the travel thereon at said time, and if you shall also believe from the evidence that the defendant or its agent in charge thereof knew, or by the exercise of ordinary care could have known, of its said condition in time to have repaired or removed the same and prevented the alleged injury, if any, but failed to do so, if it did so fail, and if under these circumstances and by reason thereof the plaintiff was thrown to the ground and injured by such contact with the said wire, then, in that event, you will find for plaintiff, and award her such amount in damages as will fairly and reasonably compensate her on account of her mental and physical suffering endured by her, if any, by reason thereof, also a reasonable compensation for the time she has lost from her business, if any, by reason thereof, together with a reasonable compensation for any permanent reduction in her power to earn money, if any, by reason thereof, not exceeding upon the whole the sum of $15,000, the amount claimed in the petition." Counsel for appellant, after stating that the language is, "If the jury shall believe from the evidence that

* * * the plaintiff came in contact wtih a line of wire * * * which defendant had negligently permitted—if it had done so—to hang over the roadbed and obstruct travel," etc., argue that the only question submitted to the jury was whether the plaintiff came in contact with the wire, and that the question of negligence upon the part of the defendant was assumed, or at least the average juror would so construe the instruction, notwithstanding the parenthetical words, "if it had done so." It will be observed, however, that counsel are mistaken both as to the language used and as to its effect. The proposition in regard to negligence is coupled with the preceding propositions by the copulative conjunction "and," and in such manner as to make it necessary for the jury, in order to find for appellee, to believe, not only the preceding propositions, but this particular proposition itself. The meaning of the language is just the same as if the court had said: "And that the defendant or its agents in charge of said line had negligently permitted said wire, if it had done so, to hang over and near the roadbed," etc. Besides, the language used contained the qualifying clause, "if it had done so," and the effect of this was to exclude from the minds of the jury the idea that negligence was assumed.

3. Counsel for appellant insist that because there was no averment in the petition of any permanent reduction in appellee's power to earn money, and no proof that she was a money earner, it was error to allow compensation on that account. The petition, after alleging that "plaintiff was thrown with great force from said buggy, and hurled with much violence against the said roadway, rendering her unconscious, severely injuring her head and neck, wrenching and

spraining her spine and the tendons and ligaments thereof, bruising, spraining and laming her right leg and right arm, cutting and bruising painfully her face, and causing her great internal injury, and physical and nervous shock," further alleges that "she is permanently disabled and crippled, and her health permanently impaired, as a result of her said injuries." It is insisted by counsel for appellant that the above allegations are not sufficient to authorize a recovery for permanent reduction in power to earn money, but that the petition itself should have specifically alleged a permanent reduction in power to earn money. In support of this position, counsel cite a large number of authorities to the effect that special damages should be specifically pleaded. This proposition is undoubtedly true, for this court has held in a number of instances that a plaintiff cannot recover for special damages such as loss of time, physicians' bills, bills for medicines and nursing, etc., unless such items are specially pleaded. (South Covington, etc., v. Ware, 84 Ky. 267, 8 Ky. Law Rep. 241, 1 S. W. 293; L. & N. R. R. v. Mason, 72 S. W. 27, 24 Ky. Law Rep. 1623; Jesse v. Shuck, 12 S. W. 304, 11 Ky. Law Rep. 463; L. & N. R. R. Co. v. Reynolds, 71 S. W. 516, 24 Ky. Law Rep. 1402; Baries v. Louisville Electric Light Co., 118 Ky. 830, 25 Ky. Law Rep. 2303, 80 S. W. 814, 85 S. W. 1186; C. & N. Ry. Company v. Hanmer, 66 S. W. 375, 23 Ky. Law Rep. 1846; Illinois Central R. R. Co. v. Hanberry, 66 S. W. 417, 23 Ky. Law Rep. 1867; L. & N. R. R. Co. v. Farris, 100 S. W. 870, 30 Ky. Law Rep. 1193.) This whole question depends upon whether a permanent reduction in power to earn money is an item of special damage, or may be recovered for under a claim of general damages. General damages are such as

the law presumes to have accrued from the wrong complained of, and need not be averred. Alexander v. Humber, 8 Ky. Law Rep. 619; Brown v. Railway Co., 99 Mo. 310, 12 S. W. 655. In Maxwell on Code Pleading, p. 79, the rule is thus stated: "Damages which necessarily and generally result from the wrongful act which is the subject of the action may be recovered under a general claim for damages." In Bradbury v. Benton, 69 Me. 199, the court said: "In legal contemplation all damages which will be sustained as the effect of the injury are sustained immediately. The future effect of the injury is not special damage, which must be alleged, but general damages which necessarily flow from the injuries received." In Watson on Personal Injuries, p. 383, we find the following: "It has been held that it is not necessary to claim damages for the future effects of injuries sustained, as such consequences are general, as distinguished from special, damages." And on page 639 the same authority says: "There need be no special averment of diminution of earning capacity, where the injuries described are of a nature usually and ordinarily to produce such results." We are therefore of the opinion that permanent reduction in power to earn money is a necessary incident of permanent disability. All that it is necessary to allege is permanent injury or such facts as show that the injury is permanent. Maysville & Big Sandy R. R. Co., etc., v. Willis, etc., 31 Ky. Law Rep. 1249, 104 S. W. 1016. Permanent reduction in power to earn money is merely the test to be applied by the jury in determining the compensation to be awarded for the permanent injury. As appellee alleged permanent disability, it was proper for the court, so far as the pleadings were concerned, to instruct the jury to

award her damages for any personal reduction in her power to earn money.

But counsel for appellant further insists that appellee was not entitled to recover compensation for any permanent reduction in her power to earn money, as there was no evidence of her earning capacity. In Fisher v. Jansen, 128 Ill. 549, 21 N. E. 598, the rule is thus stated: "A party personally injured from negligence may recover of the defendant damages for his inability to labor or transact business in the future, without any evidence of his success in business prior to his injury, or the extent of his earnings. Direct proof of any specific pecuniary loss is not indispensable to a recovery." In Macon v. Paducah St. Ry. Company, 110 Ky. 680, 23 Ky. Law Rep. 46, 62 S. W. 496, this court said: "The court also allowed for loss of capacity to perform the kind of labor for which he was fitted. This was error. It is not for the court or jury to undertake to determine the kind of labor for which he was or might become fitted." In South Covington & Cincinnati Ry. Co. v. Bolt, 59 S. W. 26, 22 Ky. Law Rep. 906, this court laid down the following rule: "Under the laws of this State she was entitled to earn wages, and, if she was deprived of her ability to do so by the negligence of the appellant, she is entitled to recover a fair equivalent in money.     *     *     *     Our opinion is that, if a married woman is injured by the negligent act of another, she is entitled to maintain an action for damages, and the same criterion of damages exists as to her as to a man or a single woman." Furthermore, in the case of a permanent injury to an infant, his recovery for permanent reduction in power to earn money, in a suit by his next friend, is limited to the time after he arrives at his majority. It is manifest, therefore,

that it would be impossible to furnish any direct evidence of his earning capacity at that time. If, then, such evidence were a prerequisite to a recovery, there could be no recovery, for any statement as to the future earning capacity of an infant would be mere, speculation, and not evidence. Of course, evidence of earning capacity is always proper, but we do not think the failure to offer such evidence is fatal to a recovery. Appellee showed that prior to the accident she was in good health, and had done the cooking, washing, ironing, and general housework for a large family. After that time she was unable to perform any of those duties. It would have been difficult either to allege or prove the value of such services in dollars and cents. She had the right, however, to earn money. Her power to do so was impaired. To what extent was a question for the jury, to be determined by the application of their common knowledge and experience to all the facts and circumstances of the case.

4. Counsel for appellant complain that the error in instructing the jury to find "also a reasonable compensation for the time she has lost from her business, if any, by reason thereof," was not cured by erasing those words from the instruction, after the conclusion of the argument on both sides, and just as the jury was retiring to consider their verdict. It does not appear in the record that counsel for appellant asked permission to re-argue the case. Furthermore, the change made in the instruction was in favor of appellant. The court not only erased the objectionable words, but admonished the jury to disregard them. The effect of this action was to impress upon the minds of the jury that, in no event, were they to award damages for loss of time. Indeed, that fact

was made even more apparent than if the instruction had been altogether silent upon the subject. We therefore fail to see how appellant was in any way prejudiced by the action of the court.

5. Appellant contends that the verdict for $7,500 is flagrantly excessive. To determine this question, it will be necessary briefly to review the evidence. The testimony for appellee, including her own and that of her daughter, her neighbors, and two reputable physicians, is to the effect that prior to the accident she was a fairly strong woman; that she had eight children, and did the washing, ironing, and scrubbing and general housework for the entire family; that after the accident she got up for a few times, but finally went to bed, and had been confined to her bed or room ever since; that she had suffered a great deal from her back and head; that she did not see well out of one eye, and had a roaring all the time in one ear; that the accident produced a concussion of the brain and spinal cord, and a functional derangement of the bladder; that she was partially paralyzed in the right arm and leg; that at the time of the trial, more than a year after the accident, she was in a helpless condition, and growing worse all the time; that she was unable to keep anything on her stomach, and had frequent rigors and sinking spells; that her family had frequently to take her up and bathe her limbs in order to ease her pain; that before the accident she weighed about 120 pounds, while at the time of the trial she weighed about 85 or 90 pounds. One of the physicians also testified that her injuries were permanent, but upon objection by appellant this evidence was excluded by the court. This ruling of the court was not proper; for, under such circumstances,

it is always proper to prove the permanency of injuries by the opinions of physicians.

One of the physicians who testified for appellant stated that he called to see appellee on September 1, 1906; that he examined her, and found her right side and arm sore and tender; that appellee said she was paralyzed, but she was not; that she could put her hand to her head, and could walk across the floor with difficulty; that it was exceedingly painful, and that she could not bear weight on her right leg; that in his opinion she was suffering from neurasthenia, and kind of nerve tire and exhaustion, and that she also had symptoms of hysteria; that he did not believe her condition was due to the injury received; that he did not know what it was due to; that it might be due to massage or a number of causes; that without any knowledge of her accident he would say that she was a neurotic, and that she was suffering from hysteria alone; that he found no evidence of concussion of the brain or spinal cord. The other physician who testified for appellant said that he called to see appellee on January 26, 1907; that she seemed thin, emaciated, and her general health not good; that this condition was due to the nervous strain through which she had been going, and was not due to the accident; that she seemed anæmic and of a weak, nervous make up; that he ascribed her condition to hysteria, confinement in the house, and lack of exercise; that hysteria was a very difficult disease to treat and overcome; that it might have been due to the accident; that in his opinion appellee was able to come to court. It is manifest from the verdict in this case that the jury adopted the views of appellee's witnesses both as to the character of her injuries and the cause thereof. And we confess that this con-

Cumberland Tel'p ,& Tel'g Co. v. Overfield.

clusion appears altogether reasonable in view of the fact that prior to the accident appellee's health was good, and there was no evidence even of that neurotic condition discovered by appellant's physicians after the accident, and for which they do not satisfatcorily account on any other ground. According to the testi-mony of her witnesses, appellee was severely injured and suffered intense physical and mental pain. By reason of her injuries, she was partially paralyzed and became a mental and physical wreck. At the time of the trial, which occurred more than a year after the accident, she was practically in a helpless condition, and was growing weaker all the time. Without regard to the statement of her physician, which should have been permitted to go to the jury, we are of the opinion that there was sufficient evidence to lead to the conclusion that her injuries were permanent. When the character of her injuries is considered in connection with the suffering she must have experienced, both physically and mentally, we are unable to say that a verdict of $7,500 is so excessive as to justify us in reversing this case.

Judgment affirmed.