## Illinois Central Railroad Company v. Williams.

(Decided March 26, 1915.)

### Appeal from Hardin Circuit Court.

1. Damages—Personal Injuries—Verdict.—In a personal injury action where the amount of a verdict is no more than was authorized under the evidence of the loss of time and business opportunities resulting therefrom and pain and suffering up to the trial, evidence more or less speculative as to the future result of the injury was not prejudicial.

2. Railroads—Evidence.—Evidence that the step from a railroad coach to the ground at the place where it stopped was unusually high is not prejudicial in view of other evidence showing the exact height of the step.

3. Railroads—Negligence—Instructions.—The moving of a train by the trainmen while passengers are getting on or alighting therefrom is negligence within itself, and an instruction submitting such an issue to the jury need not require the jury to believe that the moving was negligently done.

4. Damages—Measure of Damages—Instructions.—An instruction defining the measure of damages wherein the jury was told they might award the plaintiff such a sum as would fairly and reasonably compensate him for any loss of time naturally resulting from his injuries, or for any mental or physical pain or suffering which he had endured as the direct and proximate result of the injuries, and for any mental or physical pain which it may be reasonably certain he would undergo in the future as the direct and proximate result thereof, and any permanent reduction in his power to earn money did not authorize the assessment of double damages; although, if requested, the court should have added thereto that the allowance, if any, for the impairment of his power to earn money should begin when the allowance, if any, for loss of time ended.

TRABUE, DOOLAN & COX, L. A. FAUREST and R. V. FLETCHER for appellant.

G. K. HOLBERT and H. L. JAMES for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Affirming.

On the 16th of August, 1913, appellee was a passenger on appellant's mixed passenger and freight train which ran from Hodgenville to Elizabethtown. In alighting from the train at Elizabethtown he sprained his ankle, and instituted this action for damages, alleging that the accident happened by the reason of the negligence of the appellant.

His allegations are that at the point where the train stopped there was no convenient or suitable place or means provided whereby passengers might safely alight from the train, and that from the bottom step of the coach to the ground at that point was about two feet, and that just as he was in the act of making this deep step the trainmen, without warning to him, suddenly moved the car, whereby he was thrown to the ground and his ankle sprained.

The defendant answered, denying the material allegations of the petition, and, in addition, pleading contributory negligence.

On the trial a verdict for the plaintiff for $1,500 was returned, and from a judgment on that verdict this appeal is prosecuted.

The plaintiff stated that he was fifty years of age; that he lived in Atlanta and was the manager for the State of Georgia of some company or corporation, but had formerly lived at Elizabethtown. That on the 16th of August, 1913, he boarded the train at a station between Hodgenville and Elizabethtown, together with his wife, bound for the latter place; that at Elizabethtown there are two tracks, and the train that day stopped on the track furthest from the station, and the conductor announced "all out for Elizabethtown," whereupon he and other passengers proceeded to get off the train; that he had in one hand a grip and in the other a suit case, and that several passengers had preceded him in alighting from the train, and several others who had not gotten off were behind him; that just as he was in the act of stepping from the bottom step of the coach to the ground below there was a sudden movement of the train without warning to him, which caused him in some way to throw all of his weight on his left foot and that the foot was twisted and his ankle sprained; that he suffered severely at the time, was immediately taken to the office of a doctor, and at the time of the trial, seven months after the accident, had been almost continuously under the care of physicians; had suffered a great deal throughout that time, and had been on crutches most of the time. That in his business as manager of the corporation he was required to travel a great deal over the State of Georgia and establish agencies and otherwise attend to the affairs of his company, and since this accident he had been compelled to give up that work because of his inability to get around well, and had been assigned to office work in Atlanta. He testified that he had paid out something like $125 for medicines and medical attention since the accident.

Several physicians testified to the seriousness of his injury, substantially corroborating his statements as to the same, some of them stating that it was a permanent injury.

At least two witnesses, in addition to the plaintiff, testified that just as he stepped down from the train the brakes on the train were released and there was a jerk

because of the slack in the cars brought about by the release of the brakes.

The first ground for reversal relied upon by appellant is that the court permitted one of the physicians introduced by appellee to conjecture and speculate about what might be the future effect of the injury. The specific evidence objected to is as follows:

"Q. What I mean is, any disease, is it or not more or less likely that other diseases may set up in that joint? A. Why, I think that any injury about a bone joint where there is a continued friction would open up a field for any and all kinds of infection, tuberculosis and such things as that."

It is true that in order to recover for future pain and suffering or future development of diseases which might come from the injury, the evidence must show, with reasonable certainty, that such pain or disease would probably result; and, admitting that the evidence complained of is not strictly in line with this rule, yet in this case it was not prejudicial to appellant for the reason that the amount of the verdict is conclusive that the jury paid no attention to this evidence as to what might follow in the future from this injury. The evidence as to the nature of the injury, the suffering endured, and the loss of time and business opportunities shown as a result thereof would have justified a verdict for $1,500 without considering any future pain or suffering or disease development. Under the circumstances of this case the evidence was not prejudicial.

It is also objected that the court erred in permitting the plaintiff to state that he had traveled a great deal and that this step was unusually high; but there was abundant evidence to show what the height of the step was, that it was from 22 to 24 inches, and conceding that it was improper to permit a statement that the step was unusually high it could have had no prejudicial effect on the jury because they had before them the evidence of the actual height of the step.

The court, in effect, told the jury in the first instruction that if they should believe from the evidence that while plaintiff was attempting to alight from the train, and while he was in the act of alighting therefrom the agents and servants of the defendant in charge of the train caused same to give a sudden jerk as a result of which the plaintiff fell and was injured, they

should find for the plaintiff, and this instruction is objected to because, as argued, that it permits a recovery without regard to whether this jerk was brought about through the negligence of the defendant. But it was not necessary to use the word negligently in this instruction; if the jury believed the state of case set forth in the instruction there was of necessity negligence, for it has been held that the moving of a train by the trainmen while passengers are alighting or getting on a train, and before they have had reasonable opportunity to do so, is within itself negligence.

The case of C. & O. Ry. Co. v. Borders, 140 Ky., 548, was where a passenger was boarding a train and the same was moved while he was upon the steps of the car and before he had had reasonable opportunity to reach a place of safety. The court in that case said:

"Under such circumstances, it is immaterial whether the train is moved by an ordinary and usual jerk or an unusual and unnecessary jerk. The negligence consists in the mere act of moving the train before the passenger has had a reasonable opportunity to board the train."

See also Louisville & Nashville R. R. Co. v. Arnold, 31 Ky., 414, and Hurt v. Illinois Central Railroad Co.. 145 Ky., 475.

From the very nature of things this principle applies with equal or greater force to those who are alighting from a train as to those who are boarding the same. The evidence for the plaintiff in this case shows that the train had stopped, that the passengers had been invited to alight, that several of them had alighted and several had not, when there was a movement of the train which caused appellee's injury, or at least conduced with other causes to bring it about.

In the instruction defining the measure of damages the jury was told that they might award the plaintiff such a sum as would fairly and reasonably compensate him for any loss of time naturally resulting from his injuries, and for any mental or physical pain or suffering which he had endured as the direct and proximate result of his injuries, and for any mental or physical pain which it may be reasonably certain he would undergo in the future as the direct and proximate result of his injuries, and any permanent reduction in his power to earn money in the future. It is urged for the appellant that this instruction authorized both a recovery for

future loss of time and for the permanent impairment
of his future earning capacity, and that under it the
jury might have assessed double damages, as the future
loss of time and a permanent impairment of his earning
capacity constitute the same item of damages.   In the
case of L. & N. v. Barrickman, 104 S. W., 273, the jury
was instructed that they might find for the plaintiff
"the value of the time lost by him, if any, by reason of
the injury, if any, or which it is reasonably certain he
would hereafter lose as a direct result of the injury
*   *   *   as well as for any permanent reduction of his
power to earn money by reason of said injury."   It
was urged in that case for appellant therein that under
this instruction double damages were authorized, and the
court, in response to that argument, said:

"Of course the same item of damage should not be
allowed twice.  The meaning of the instruction is that
the plaintiff should have compensation for his lost time
while sick and for any permanent reduction  of  his
power to earn money thereafter.   The jury could not
have understood that, in fixing compensation for perma-
nent reduction in power to earn money, the time plain-
tiff lost while laid up was to be considered.   This was
temporary disability, and might be much greater than
the permanent reduction of his power to earn money.
The permanent reduction of the power to earn money
refers to the state of facts existing after the temporary
condition has passed away."

Instructions similarly worded have been approved
by this court in L. & N. R. R. Co. v. Logston, 114 Ky.,
746; C., N. O. & T. P. R. R. Co. v. Silvers, 126 S W., 120;
Covington & Cincinnati Ry. Co. v. Core, 29 R., 836; City
of Georgetown v. Broff, 136 Ky., 663; Cumberland Tel.
& Tel. Co. v. Overfield, 127 Ky., 548; Bluegrass Trac-
tion Company v. Ingles, 140 Ky., 488.

But the court in the latter opinion, after approving
the form of the instruction, said:

"But, if requested, the court should add that the al-
lowance, if any, for impairment of power to earn money
should begin when the allowance, if any, for time lost
ended."

In this case, however, appellant offered no instruction
on the measure of damages, and made no such request
to modify the instruction as is suggested in the Ingles
case.

The contention that the verdict is excessive will not receive further consideration, as it has already · been practically passed upon in determining another question.

We see no prejudicial error, and the judgment is affirmed.