## Louisville & Interurban Railroad Company v. Whitesides.

(Decided March 10, 1925.)

### Appeal from Oldham Circuit Court.

1.  Carriers—Carrier Permitting Car to Start while Passenger Steps Off is Negligent.—Defendant carrier was negligent if it permitted its car to start while a passenger was in the act of stepping off the car and before he had a reasonable opportunity to do so, whether car was started with unusual jerk or not.
2.  Carriers—Whether Defendant's Car Started when Passenger was Alighting Therefrom Held for Jury.—Where the evidence was conflicting on the question whether defendant's car started while

plaintiff as a passenger was alighting therefrom, the issue was properly submitted to the jury.

3.   Damages—Damages of $2,000.00 for Atrophied Shoulder and Fore-arm Held Not Excessive.—Damages of $2,000.00 for injuries to person already crippled, resulting in atrophied shoulder and fore-arm, condition of which would grow worse, held not excessive.

TODD & BEARD for appellant.

ROBERT T. CROWE and WM. J. CROWE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Enos Whitesides brought this suit against the Louisville & Interurban Railroad Company to recover damages for personal injuries. From a verdict and judgment in his favor for $2,000.00 the company appeals.

Whitesides, who conducted an electric shoe shop in LaGrange, lived at Buckner, a station on appellant's line, about four miles west of LaGrange. It was Whitesides' custom to go to and from LaGrange on one of appellant's cars. On the evening of March 15, 1923, he was a passenger on a car that reached Buckner about 6:45. According to his testimony, the car stopped at Buckner. He then went down the steps, and just as he was in the act of stepping off, the car started and jerked him around against the side of the car, causing the injuries of which he complained. On the other hand, the conductor on the front car and the conductor on the trailer said that the car did not start until after Whitesides was on the platform and was walking away, and that he did not complain then, or the next day, of receiving any injury.

It is first insisted that appellant was entitled to a peremptory because it was not shown that the car was started with an unusual and unnecessary jerk. If it be true that appellee was injured while in the act of stepping off the car, and before he had had a reasonable opportunity to do so, then appellant was negligent regardless of the character of the jerk with which the car was started. Chesapeake & Ohio Ry. Co. v. Borders, 140 Ky. 548, 131 S. W. 388; Louisville & Interurban R. Co. v. App, 157 Ky. 246, 162 S. W. 1123; I. C. R. Co. v. Williams, 163 Ky. 831, 174 S. W. 741. As the evidence on this issue was conflicting, the question was properly submitted to the jury.

The claim is also made that the damages are excessive. It appears that when appellee was about eight years

old he had scarlet fever, which left him a cripple, and since that time his body has been badly deformed. He also had the "flu" about a month before the accident. Three days after the accident he went back to the shop for the purpose of directing his assistant in the completion of some work which had to be done. The morning after the accident he called on Dr. Connell, who rubbed his shoulder and gave him some tablets. After that he stayed in bed for two weeks, and away from work for sixty days. His ankle, knee and shoulder were sore. After the accident he suffered a great deal, could not get any rest or sleep, and was still suffering at the time of the trial. Dr. Connell, a physician, testified that prior to the injury appellee was normal from his waist up. He attended appellee several times after the injury, and was compelled to give him morphine because of the pain. On the day before the trial he and Dr. Blaydes made a thorough examination of appellee, and he found that the shoulder and forearm were atrophied, a condition which did not exist before the injury. He also discovered a soreness in the muscles of the shoulder, chest, back, arm and shoulder joint. In his opinion, appellee's condition will grow worse, and he saw no reason to believe he would ever get well. He further stated that as far as manual labor was concerned, appellee was as helpless as an infant. On the other hand, Dr. Blaydes, a witness for the company, stated that appellee had been a cripple ever since he had known him. His deformity had existed for a number of years. When he examined him he found no objective symptoms. The only tenderness or soreness he discovered was by palpation, and appellee's response thereto. Appellee also seemed to be suffering from neurosis in his shoulder. In his opinion, the soreness will pass away, and the atrophied condition had existed long prior to the accident. Appellee's deformed condition for many years leaves room for doubt as to whether the shrinkage of his muscles was due to the injury which he received at the time of the accident; but in view of Dr. Connell's positive statement that he examined appellee before the injury, that the atrophy did not then exist, that it could have been caused by traumatism, and that it would continue to grow worse, we can not say that the damages are excessive.

Judgment affirmed.