## C. & O. Ry. Co., et al. v. Johnson.

(Decided November 22, 1911.)

### Appeal from Mason Circuit Court.

Railroads—Personal Injury—Damages—Action For.—In an action for damages for personal injuries, evidence examined and held that the verdict is flagrantly against the evidence.

WORTHINGTON, COCHRAN & BROWNING for appellants.

ALLEN D. COLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, John Johnson, while walking along the tracks of the Chesapeake & Ohio Railway Company, on February 18, 1909, was struck and run over by one of its freight trains. The injuries which he received made it necessary shortly thereafter to amputate both of his legs. He brought this action against the railway company, Frank Robinson, its engineer, and Harry Caldwell, its conductor, to recover damages. The jury returned a verdict in his favor for the sum of $3,000, and the defendants appeal.

The railway company maintains a coal dock on the line of its road about one mile east of the city of Maysville. The dock is a building equipped with suitable machinery and other apparatus for supplying coal to passing trains. From the city of Maysville to the coal dock the railway is double-tracked. The south track is ordinarily used for eastbound trains, while the north track is used for westbound trains. It is not unusual, however, for eastbound trains to run on the north track, and for westbound trains to run on the south track. Just beyond the eastern limits of Maysville there is a street called Carmel. East of this street is Dietrich's Lane. About a quarter of a mile east of Dietrich's Lane is the County Infirmary crossing. About 1,800 feet east of the Infirmary Crossing is the Brick Yard crossing, a private road which leads into the plant of the Maysville Brick Company. Between the Infirmary Crossing and the Brick Yard Crossing, and about 600 feet west of the latter crossing, there is located a switch that leads into the brick yard. It was near this point that plaintiff was struck and injured. This point is about three-quarters

of a mile east of Maysville and about a quarter of a mile west of the coal dock. After passing east and beyond the limits of the city of Maysville the only house abutting on the railway is the residence of a man by the name of Joseph Mitchell. This house is located on the south side of the tracks, and is about 600 feet west of the place of the accident.

On the day he was injured plaintiff left his home for the purpose of going to work at the coal dock. His working hours were from 5:30 p. m., until 5:30 a. m. After crossing Forest avenue he came to the railway tracks. At Carmel street there is a curve in the track. For some time plaintiff walked on the south or eastbound track. When he reached the Mitchell house he first heard the train whistle west of Carmel street. Owing to congestion on the east bound track the train in question was running, under orders of the chief train dispatcher, on the north or westbound track. Plaintiff was unaware of these orders. Upon hearing the train whistle for Carmel street he looked back, and not seeing the train on account of the curve, but thinking it was coming, as usual, on the south or east bound track, he crossed over to the north or west bound track. He continued walking on this track, in a hurry to get to the coal dock to load the tender of the approaching engine with coal. After whistling for the Carmel street crossing—the same crossing signal—two long and short blasts of the whistle—was given for the Infirmary crossing. Shortly thereafter another crossing signal was given. Plaintiff admits that he heard these signals given as many as three or four times. Though he heard the train approaching he did not look back. He supposed the signals were given for the block and that the train was on the east bound track. He did not hear any danger signals or sharp blasts of the whistle until about the time he was struck, though it would seem that his testimony upon this point was inconsistent with that given upon the first trial. According to plaintiff's statement, he was struck five rail-lengths west of the switch, and was carried to a point opposite the switch. The train thereafter ran about fifteen car-lengths further, or a distance of about 495 feet.

Thomas Boone, one of plaintiff's witnesses, claims to have seen the train stop about five rail-lengths west of the brick yard crossing. Andrew Clark testified that he also remembered the train stopping that evening just below the brick yard crossing. Other witnesses testified as

to measurements made by them of the distances between certain points. According to their testimony the distance from the Cemetery Gate Crossing to the Infirmary Crossing is 720 feet; from the latter point to the Mitchell house 660 feet; from the Mitchell house to the point at the switch where plaintiff claims he was struck is 495 feet; from the point where he was struck to the point where he claims the engine carried him is 165 feet; and from the point where the engine carried him to the place where the engine stopped is 495 feet. These measurements, however, are based chiefly upon information given by the plaintiff as to where he was injured, where he was carried, and where the engine stopped after it ceased to drag him.

According to the proof for defendants, the train which struck plaintiff was an east bound freight of fifty cars; its speed was from twelve to fifteen miles an hour. As the train proceeded on its way the usual crossing signals were given for the Infirmary Crossing. When this point was reached the engineer saw plaintiff upon the track. Shortly afterward he gave another road crossing signal for the purpose of warning plaintiff of the train's approach. This latter signal was given in front of the Mitchell house. At that time plaintiff was about 500 feet distant. After going four or five car-lengths the engineer began sounding the danger whistle and put on the emergency brake. After striking the plaintiff the train ran about 150 or 160 feet. In another place the engineer states that he was about seven or eight car-lengths distant from plaintiff when he began to sound the alarm whistle and put on the brakes. The fireman estimated the distance at from 150 to 200 feet. Several witnesses corroborated the engineer and fireman as to the sounding of the alarm blasts and the amount of noise they made. The train was running of its own momentum at the time the emergency brakes were applied, and had probably slowed down a little. The only eye witnesses to the accident, besides plaintiff, were the engineer, fireman and brakeman. There is no substantial difference in their testimony.

Upon this testimony defendants insist that they were entitled to a peremptory instruction. Of plaintiff's own negligence there can be no question. It was his duty to use ordinary care to discover the approach of the train and to keep out of its way. Instead, although the train was constantly approaching, he never looked back after

the train crossed Carmel street, but went heedlessly on in the mistaken belief that it was coming on the east bound track. Had he simply turned his head he would have escaped injury.

But the question still remains: Did the defendants, after discovering plaintiff's peril, use ordinary care with the means at their command to avoid injuring him. In this connection it is argued by counsel for defendants that, having given the road crossing signal when about 500 feet from the plaintiff, which plaintiff admits that he heard, they had a right to presume that plaintiff would heed the warning and get off the track, until it became reasonably apparent from his manner that he was unconscious of the approach of the train. After giving the signal defendants had a right to see whether or not it would be heeded. In the meantime the train went four or five car-lengths nearer to the plaintiff. Then realizing, perhaps, that plaintiff was oblivious of his danger, the alarm blast was sounded and the emergency brakes applied. It is, therefore, argued that the evidence conclusively shows that, after plaintiff's peril was discovered, the defendants used all reasonable care with the means at their command to prevent the accident. It may be conceded that the overwhelming weight of the evidence sustains counsel's contention, but as plaintiff swears that the alarm blast was sounded about the time he was struck, and it is admitted that the brakes were applied at the time the alarm blasts were sounded, and there is some evidence to the effect that the train did not stop until it had proceeded about 650 feet after striking plaintiff, and that a train moving as slowly as the train in question would not have gone so far as it did had the alarm been sounded and the brakes applied at the time defendants claim they were, we cannot say that there was no evidence upon which to submit the case to the jury. In view, however, of plaintiff's testimony, which is not only vague and uncertain, but, to say the least, somewhat at variance with the testimony he gave upon the first trial and of the testimony as to the distance which the train ran after striking him, which is based chiefly upon his recollection of the matter, though he was rendered unconscious when he was struck, we conclude that the finding of the jury is flagrantly against the weight of the evidence.

In view of the fact that another trial must be had, we deem it proper to direct the trial court to insert in In-

struction No. 1, immediately after the words "if they failed to do this" the words "and by reason of such failure the plaintiff was injured;" so that the instruction will conclude as follows: "If they failed to do this, and by reason of such failure the plaintiff was injured, the jury will find for the plaintiff."

In lieu of Instruction No. 2 the court will give the following instruction:

"The engineer was not required to take steps to check or stop his train until he knew, or by ordinary care should have known, that plaintiff was unconscious of his danger and would not leave the track, and if after this he could not have avoided the injury to the plaintiff by ordinary care in the use of the means at his command, the jury should find for the defendant."

In lieu of Instruction No. 5, on the measure of damages, the court will give the following instruction:

"If you find for plaintiff you will award him such sum in damages as will fairly compensate him for any mental and physical suffering which he has endured, or it is reasonably certain he will hereafter endure, and for any permanent impairment of his power to earn money, which you may believe from the evidence are the proximate result of his injuries, not exceeding in all, however, the sum of $25,000.00, the amount claimed in the petition."

Judgment reversed and cause remanded for proceedings consistent with this opinion.