## Cincinnati, New Orleans & Texas Pacific Railway Co. v. Martin.

(Decided January 17, 1912.)

## Appeal from Boyle Circuit Court.

1. **Instructions—Failure to Ask.**—Where the instructions of the court are correct as far as they go, a party cannot complain that other instructions should have been given, if he failed to ask them on the trial. In a civil case it is not incumbent upon the court to give to the jury the whole law of the case in his instructions; but it is incumbent on litigants to ask such instructions as they deem proper.

2. **Master and Servant—Torts—Instructions.**—The rule that in order for the servant to recover damages for injuries caused by defects in appliances used in a business, he must establish three propositions: (1) that the appliance was defective; (2) that the master had notice thereof, or knowledge, or ought to have had; and, (3) that the servant did not know of the defect, and did not have equal means with the master of knowing of the defect, is to be applied only in suits based upon a defect of appliances, and does not apply in actions based upon the failure of the master to perform a required duty.

3. **Res Gestae.**—The general rule is, that all declarations made at the same time the main fact under consideration took place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the res gestae, in other words, a part of the thing done. A statement made by an engineer an hour after his train had stalled in a tunnel, as to the cause of the stalling, was not a part of the res gestae.

4. **Evidence—Conversation with Agent who has Subsequently Died.**—Under sub-section 2 of Section 606 of the Civil Code, which provides that no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by one who is dead when the testimony is offered to be given, a conversation between the servant and the engineer of a train, who has since died, is not competent testimony.

5. **Verdict Flagrantly Against the Evidence.**—Where the verdict of the jury is flagrantly against the weight of the evidence, it will be set aside and a new trial awarded.

CHARLES H. RODES, JOHN GALVIN and GEORGE E. STONE for appellant.

J. W. RAWLINGS and HARDIN, PURYEAR & HARLAND for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellee, a fireman upon the appellant's railroad, left Danville, Ky., at midnight on February 14, 1909, as fireman on engine No. 714, which was drawing a heavy freight train of 26 cars, to make a run of 138 miles to Oakdale, Tenn. The road passes southwardly through King's Mountain tunnel, in Lincoln county, about 23 miles south of Danville. The tunnel is about one mile long; and after the engine had passed through about three-fourths of the distance in the tunnel, and upon an ascending grade, the train came to a stop, and was unable to proceed further. The tunnel became filled with smoke, fumes and gases, from which appellee claims he was suffocated; and, becoming insensible, he fell from the engine where he was firing, on to the side of the track, thereby injuring and bruising him about the head, back and legs. He brought this suit for damages, alleging that appellant had carelessly and negligently failed to have its engine properly equipped with sand, thereby causing his injuries. After the train had remained at a standstill in the tunnel from twenty to thirty-five minutes, according to the evidence of the trainmen, Cy. Ketchings, the engineer in charge of the locomotive, succeeded in getting the train started again, and carried it out to a point about a quarter of a mile from the southern end of the tunnel. Dunlap, the conductor, having missed Martin, walked back into the tunnel as far as the point where the train had stopped, searching for him; but having failed to find Martin, Dunlap returned to the train, where Martin was found lying insensible under the smoke box above the cow catcher. No explanation is given as to how he reached that point. Martin testifies that he fell from the engine when he became insensible, and knew nothing as to what subsequently happened until after he had been removed from the engine. He further says that when the car stopped he went out upon the running board of the engine, and looked into the sand box, and then went back to his post on the engine. The trainmen say the only way he could possibly have gotten to the place where he was found, was by going around to the front of the engine and climbing up over the cow catcher. In addition to a traverse, the answer presents a plea of contributory negligence on the part of Martin, in that he let his fire go down to such a degree that it failed to furnish an adequate supply of steam to haul the train up the grade. Upon the trial the jury returned a verdict

for Martin for $725, and from a judgment thereon, the company appeals.

1. The court gave a single instruction to the jury, which reads as follows:

"If you believe from the evidence in this case that the defendant negligently failed to have its engine properly equipped with sand, and by reason thereof the train on which he was fireman stalled in the tunnel, and the plaintiff became suffocated and fell from the engine and was thereby injured, you will find for the plaintiff such sum as will reasonably compensate him for any mental suffering or physical pain, if any, and if his injury is permanent for any decrease of his power to earn money, not exceeding $2,000 in all.

"Unless you so believe you will find for defendant."

Appellant insists that this instruction was erroneous, because it failed to incorporate in it the idea of a want of knowledge by Martin of the supply of sand at the time and before the engine entered the tunnel; and, in support of that contention, appellant relies upon Bogenschutz v. Smith, 84 Ky., 340, where we said, in substance, that in order for a servant to recover for defects in the appliances used in a business, he must establish three propositions; (1) that the appliance was defective; (2) that the master had notice thereof or knowledge, or ought to have had; and, (3) that the servant did not know of the defect, and did not have equal means with the master of knowing of the defect. Since, however, the appellant did not offer any instruction covering this phase of the case, this point might well be disposed of under the rule announced by this court in Ventura Hotel Co. v. Pabst Brewing Co., 128 S. W., 292, where we said:

"The instructions of the court are correct as far as they go. If, as urged by appellant, other instructions should have been given, defining more clearly the measure of damages, the plaintiff should have asked them on the trial. It asked no instructions, and can not complain here that other instructions were not given. In a civil case it is not incumbent upon the court to give to the jury the whole law of the case in his instructions; but it is incumbent on the litigants to ask such instructions as they deem proper."

The same rule was announced in C., N. O. & T. P. R. R. Co. v. Curd, 22 Ky. Law Rep., 1222, and in other cases.

2. Furthermore, we are of opinion that the rule con-

tended for by appellant is not applicable to this case, but can be applied only in suits based upon a defect of appliances, while the action before us is based upon the failure of the appellant to perform a required duty. In the Bogenschutz case we used this language:

"We do not mean to decide that there may not be cases where the servant has the right to rely upon the judgment of the master as to the safety of the premises, or to the material to be used, or that the servant is bound to inform himself as to them."

Furthermore, the doctrine of the Bogenschutz case was reviewed and limited in its application in Pfisterer v. J. H. Peter & Co., 117 Ky., 507, where we said:

"In numerous subsequent opinions the doctrine has been disaffirmed, and the rule announced that the duty of furnishing reasonably safe tools, materials, and place to work, was primarily on the master, and that the servant was under no duty to discover such defects, and unless he knew of their existence or that they were patent and obvious to a person of his experience and understanding, that he would not be precluded from recovery."

In that case it was held that the right of any employe to recover for damages caused by the fall of a platform on which he was standing, was not affected by the fact that he had equal means with his employer of knowing that it had not been constructed in a reasonably safe manner, and that in an action for personal injuries to an employe, where defendant's liability depended solely upon whether he had provided plaintiff with a safe place to work, an instruction that plaintiff assumed the ordinary risks of his employment, and that, if attended with danger, it was necessary to exercise ordinary care to avoid danger, was inapplicable to the case, although unobjectionable as an abstract proposition of law. The cases are reviewed at length in the opinion in the Pfisterer case, which states the result of the authorities in the following language:

"The law imposed upon the plaintiff the duty of exercising ordinary care for his own safety, not knowingly to expose himself to unnecessary and obvious risks, when he accepted employment from the defendant; but he did not assume risks that were unknown to him, and which were not necessarily incident to his employment, nor risks which the defendant, by the exercise of ordinary care could have guarded against. It is the duty of

a servant to obey the reasonable demands of his master, and he had the right to believe that he would not be required to incur risks growing out of the negligent construction by the defendant of the scaffolding upon which he was required to stand in performing the work in obeying the orders of his master.''

Kentucky Free Stone Co. v. McGee, 118 Ky., 311, and Cumberland Tel. & Tel. Co. v. Metzger, 29 Ky. Law Rep., 1026, are to the same effect, and point out the modification of the rule announced in Bogenschutz v. Smith. The court did not err in failing to incorporate into the instruction the doctrine announced in that opinion.

3. Shortly after Cy. Ketchings, the engineer, had gotten the train out of the tunnel, he said to his brother, J. R. Ketchings, and Conductor Dunlap, that the train stalled or stopped in the tunnel because of a want of sufficient steam, and that he had to kindle the fire himself in order to procure enough steam to enable the engine to pull the train out of the tunnel, because Martin had let it go down. Appellant offered to prove this fact as a part of the res gestae, but the court refused to admit it, and it is insisted that his refusal constitutes a reversible error. In I. C. R. R. Co. v. Houchins, 31 Ky. Law Rep., 94, we held that a statement made by an engineer in about five minutes after a collision of one train with another, was a part of the res gestae, and, therefore, competent to be proved. In L. & N. R. R. Co. v. Foley, 94 Ky., 221, we held that the declaration of the car inspector, that he had been troubled with the coupling of the two cars in question before the train started from the yard, was competent as a part of the res gestae, although made ten minutes after the injury, and after plaintiff had been carried to the depot near where the injury occurred. A somewhat similar ruling was made in Floyd v. P. R. & L. Co., 23 Ky. Law Rep., 1077.

In L. & N. R. R. Co. v. Ellis' Admr., 97 Ky., 343, we said:

''The general rule is that all declarations made at the same time the main fact under consideration takes place, and which are so connected with it as to illustrate its character, are admissible as original evidence, being what is termed a part of the res gestae, in other words, a part of the thing done.''

But in Hughes' Admr. v. L. & N. R. R. Co., 104 Ky., 780, where the facts were quite similar to the facts in the case before us, it was held that a statement made by a

brakeman after a train had run a mile and a half and the brakeman had returned to the bridge, to the effect that the decedent had been knocked from the train, was not competent as part of the res gestae; and in Davis v. L., H. & St. L. Ry., Co., 30 Ky. Law Rep., 172, we held that a statement of an engineer made some minutes after the accident, was too remote to be a part of the res gestae, and was incompetent as substantive evidence.

See also, Early's Admr. v. L., H. & St. L. Ry. Co., 115 Ky., 13.

In the case at bar the statement was made by Ketchings about an hour after the train had stopped in the tunnel, and after it had traveled half a mile from that point. Under the rule above indicated, it is clear that this testimony was not competent.

4. The engineer, Ketchings, was dead at the time of the trial, and over the objection of appellant, appellee was allowed to testify to a conversation between himself and Ketchings in the tunnel, wherein Martin stated that he requested Ketchings to back the train out of the tunnel, or cut the engine loose and go out, and that Ketchings refused to do it. Ketchings, in so far as the management of the engine and train was concerned, was the agent of the appellant, and as he was dead at the time the appellee testified to the alleged conversation, the testimony was incompetent under sub-section 2, of section 606 of the Code, which provides that no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by one who is dead, when the testimony is offered to be given. We have repeatedly held that in a case of this kind the agent stands in the place of the principal under that section of the Code, and where the conversation was had with an agent, the opposing party can not testify concerning it, if the agent is dead when the testimony is offered to be given. Harpending v. Daniel, 80 Ky., 449; Mutual Life Insurance Co. v. O'Neil, 25 Ky. Law Rep., 983; Maxey v. Bethel, 23 Ky. Law Rep., 1085; and Breckinridge v. McRoberts, 20 Ky. Law Rep., 699. This testimony should have been excluded.

5. Finally, appellant insists there should be a reversal because the verdict is flagrantly against the weight of the evidence. Martin testified that he was suffocated by gas, fumes and smoke in the tunnel, and was injured by falling from his usual place on the engine to the ground. All the proof is to the effect that Martin was found on

the front of the engine near the smoke stack, and not on the ground, and that it was a physical impossibility for him to have fallen there from his position between the engine and the coal tender. No witness except Martin, testified that he fell from the engine. The gravamen of his case was the failure of the appellant to have its engine properly equipped with sand. The evidence upon this point was heavily against Martin. Appellant shows by several witnesses that the sand dome on the top of the engine, not only had an abundance of sand to carry the train to Oakdale, in Tennessee, a distance of more than 110 miles south of the tunnel, but that it did so without replenishing the supply of sand. When the train reached Somerset, a short distance south of the tunnel, Engineer Thompson, who took charge of the train and relieved Ketchings, testified that as soon as he mounted the engine he examined the sand box, and it was then about two-thirds full of sand; that there was no place between King's Mountain tunnel and Somerset, where a fresh supply of sand could have been obtained, and the nearest place at which a supply of sand was kept was Ferguson, a station one mile south of Somerset. Appellant further showed by several witnesses that the train not only came out of the tunnel without any fresh supply of sand, but that it completed its journey to Oakdale, going up grades heavier than that in the tunnel, without any fresh supply of sand. The only witness who testified that there was no sand in the box, was appellee. It is true that he introduced Frank Saunders, a colored man, who was the watchman of the engines in the yard, and kept them supplied with water and coal, who testified that he examined the engine sometime before six o'clock on the evening before it went out on its trip, and that it had very little sand in it. Saunders further says, however, that he reported that fact to Foreman Hayes some time during the afternoon; but in this he is flatly contradicted by Hayes, who shows that he was in Birmingham from the 13th to the 20th of February, and by McRea, who was acting as foreman in the place of Hayes during his absence. It was not a part of Saunders' duty to examine the sand box, and he admits that he last saw it some six or seven hours before the departure of the engine. There is no other testimony in support of the claim of appellee upon this vital point in the case; on the contrary, not only the witnesses for appellant show

that there was an abundance of sand in the box, but the fact that the train was run from the tunnel more than 110 miles further upon its trip without a fresh supply of sand, strongly supports appellant's theory of the case, that the train stalled in the tunnel for the want of steam caused by appellee's failure to do his duty as a fireman.

Under all the facts, we feel constrained to hold, that the verdict of the jury is so flagrantly against the weight of the evidence, that it should be set aside, for this additional reason.

Judgment reversed, and action remanded for a new trial.