## Iseman v. Hayes.

(Decided February 5, 1932.)

W. A. BERRY and BEN S. ADAMS for appellant.

C. C. GRASSHAM and ROY GARRISON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

On July 26, 1930, appellee, Mrs. Alice Hayes, instituted this action in the McCracken circuit court to recover of appellant, Mrs. A. L. Iseman, damages for injuries received by her in falling from a stepladder, upon which she was standing while engaged on April 10, 1930, in washing the paint on bathroom walls and door of appellant's home, upon which work she was at the time employed by appellant.

Appellee, in her petition, alleges that, while thus employed by appellant upon said housework, "she was directed by appellant to wash the paints of the bathroom wall and door, and that in order to do said work, she was required by the appellant to use and stand upon her stepladder to reach certain parts of the walls and door; and while engaged in washing the paints inside the door and while standing upon said stepladder, holding to

the door with her left hand, in order to prevent said stepladder from tipping or turning with her, the defendant, Mrs. A. L. (Amanda) Iseman, agreed and undertook to hold the stepladder while she was thereon, as it was known to the defendant, the owner of the ladder, that it was unsafe, and insecure for use as such by any person climbing or being thereon, unless it was so held by another.''

The plaintiff further alleges that she was unwilling and refused to go upon said ladder and make such use thereof without appellant's agreeing to hold same for her; that appellant had held it for her during the washing of the walls of the bathroom; and further alleges that while she was upon the ladder and her hand on the door to steady herself, that the defendant, without previous notice, turned the ladder loose, and left her unsupported except by her hold upon the door, and that before plaintiff had time or opportunity to remove herself from the ladder, and immediately upon the defendant's act of withdrawing her aid in steadying same, that the ladder turned, ''throwing the weight of plaintiff and ladder against the door, closing the door upon her fingers of left hand and precipitating her to the floor, with her entire weight upon the imprisoned fingers of her left hand; that her left hand was thereby badly mangled, its index finger crushed and middle finger torn from the hand and the entire use of hand thereby destroyed, causing plaintiff much physical pain and mental anguish, permanent injury and loss of time by reason thereof''; all of which were caused, it is alleged, by the negligence of the defendant, and of which ''it was the direct result of the defendant doing and failing to do the things aforesaid, but for which her injuries would not have occurred, and because of which she has been damaged in the sum of $5,150,'' for which she prays judgment, together with costs and all other relief.

Appellant demurred to the petition, and also filed answer thereto, controverting all its averments, and by separate paragraphs pleaded contributory negligence and assumed risk.

Appellee filed demurrer to the plea of assumed risk, and also her reply denying all affirmative averments of the answer.

Counsel for appellant, each in separate briefs present and very strongly argue some eight points as

grounds for reversal, only three of which we deem it needful to now consider and dispose of.

These are, first, that there was no negligence shown and the court erred to the prejudice of the appellant in refusing to give the jury peremptory instruction A, directing verdict for appellant, moved for at the close of appellee's evidence, and again at the conclusion of all the evidence; second, that the verdict is flagrantly against the evidence; and, third, that instruction No. 2 is prejudicial to the appellant, because it did not properly submit to the jury the measure of damages, and by this instruction certain material facts were assumed, and left to the jury a question of speculation.

With reference to the first contention of appellant, that the court erred in not sustaining her motion for a directed verdict, our disposition of this involves an analysis of appellee's evidence, upon which the argument is based, that no negligence was shown thereby.

Appellee testified that she is an old woman of some seventy-four years of age and had for some years been employed by appellant in her home for general housework; that the accident in question, whereby she was injured, occurred on April 10, 1930, at which time she was employed by the appellant, in helping her to wash the bathroom walls and doors of her home, when appellant did the low work and she the high work around the walls and ceilings, and in which washing they used appellant's dilapidated stepladder, which was defective in "its one side being shorter than the other"; further, she states that when, in the course of this washing work, appellant and she came around to the door of the bathroom, appellant was standing behind her and had hold of the ladder, while appellee had hold of the door with her left hand and was washing the transom with the other, and when appellee "had gotten it washed and had one foot on the ladder and the other fixing to step on the floor, Mrs. Wilkins came in the house and hollered and Mrs. Iseman said, 'I will see what she wants,' and turned loose of the ladder and went out and that let the ladder turn with me and threw me against the door"; she testifies further that she thereby caught her hand in the door; "that she pulled her hand out and her forefinger was mashed flat and cut across and the middle finger was cut clear off, hanging down by a little piece of skin, and

she now has no movement in her hand and fingers are stiff.''

She states that no one else was up there in the bathroom at the time of the accident but Mrs. Iseman and her, and that later when she showed Mrs. Iseman her injured hand, Mrs. Iseman screamed and, ''went right up in the air.'' Mary (Mrs. Ware) and Mrs. Wilkins came up the steps and grabbed her and she told them to ''call my boy,'' and that Dr. Reddick, too, was called, and they both came.

Upon cross-examination, she denied that she made any statements either to appellant or Dr. Reddick, or any of appellant's witnesses, whereby she admitted that the accident was due to her fault, and that appellant had warned her at the time to stay off the ladder.

Appellee's three other witnesses who were introduced, namely, Charles Hayes, her adopted son, Dr. H. H. Duley, and Mrs. C. B. Hunt, testified only as to the appellee's suffering caused by her injury, Dr. Duley stating that her hand was permanently injured; but no one of them was present at the time of the accident nor undertook to testify as to the cause or circumstances under which it occurred.

By appellee's testimony, thus given in her own behalf upon the trial, her evidence is that both the appellant and she knew the appellant's stepladder was defective and dangerous, when used for standing thereon while washing high places upon walls, unless it was supported and made steady by another's holding it at such time. Also it appears from her testimony that appellee was at the time of so using the stepladder under the direction of appellant, her employer, who, by holding it, undertook to make it safe for appellee to stand upon while doing the door washing work as directed by her.

She further states that the appellant, though knowing the situation and having undertaken to provide her a safe tool with which to do the work of washing the walls, by holding the ladder steady for appellee, did, in violation of her duty, owing appellee under such circumstances, to hold the ladder steady for her while standing upon it, and engaged in doing appellant's work, none the less, without giving appellee any notice of her intention to withdraw her support from the ladder, negligently released her hold upon it while appellee was thereon with the result, as it was reasonable, and under the stated circumstances to have been anticipated by appellant, that

the ladder turned and fell, and appellee with it, directly causing her the hurt and injury complained of.

By appellee's testimony, there was thus presented evidence that appellant's release of the ladder, under the circumstances mentioned, was a breach of duty which she owed plaintiff and which would render her responsible for the injury resulting from this, her negligent act. This evidence was thus sufficient to disclose the existence of a duty, owing, under the conditions related, by appellant to appellee to hold the ladder upon which appellee had gone, while she remained thereon at work, and it sufficiently appeared by plaintiff's testimony that appellant violated this duty by withdrawing, without notice given the appellee, her hold or support from the ladder, and that appellee was damaged by reason thereof. Appellee's testimony thus evidenced a direct act of negligence by appellant, by which appellee's injury was caused and directly resulted therefrom.

Appellant contends that she was entitled to a peremptory instruction upon the conclusion of this evidence; but the rule is, that if plantiff introduces any evidence of substance and having the quality of proof, which tends to sustain his case, the question should be submitted to the jury; the decision of every issue of fact being for the jury. Sydnor v. Arnold, 122 Ky. 557, 92 S. W. 289, 28 Ky. Law Rep. 1250; Chesapeake & O. R. Co. v. Conley, 136 Ky. 601, 124 S. W. 861. Further, the rule is that a scintilla of such evidence warrants the submission of the case to the jury, and, although the weight of the evidence overwhelmingly supports one contention, the court must submit the issue to the jury where there is some evidence to the contrary. Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852. Again under this rule, this court has stated that, where there is any evidence tending to support plaintiff's contention, it is proper to refuse motion for a peremptory instruction. Switchmen's Union of North America v. Johnson, 105 S. W. 1193, 32 Ky. Law Rep. 583.

As it appears that there was such evidence found in the testimony of plaintiff as tended to support her contention, we conclude that the trial court properly overruled appellant's motion for a peremptory instruction or directed verdict.

However, in reference to and in considering appellant's second point and contention, that the judgment

should be reversed upon the ground that the verdict was flagrantly against the evidence, it may be here stated that while we have in this state what is known as the scintilla rule, discussed supra, it does not follow and we do not have a rule requiring that a verdict should stand, even though it be supported upon a scintilla of evidence, as against overwhelming and creditable evidence to the contrary, or where it is clearly and palpably against the weight of evidence. Cincinnati, N. O. & T. P. Ry. Co. v. Zachary's Adm'r, 106 S. W. 842, 32 Ky. Law Rep. 678. A new trial may be granted under subsection 6 of section 340 of the Civil Code of Practice, although there was sufficient evidence to take the case to the jury. Chesapeake & O. Ry. Co. v. Johnson, 151 Ky. 809, 152 S. W. 962.

A full and careful review and consideration of the evidence afforded by the entire record in the case at bar discloses that appellee's testimony, given in her own behalf, recited in extended detail, supra, by which she attempts to relate the facts and circumstances under which she claims her injury was received as the direct result of the defendant's negligent act, is the only evidence found in the record supporting, or even tending to support, her claim that her injury was caused as the proximate result of appellant's alleged negligence; nor is she corroborated or supported in her version and account of the happening of this accident either by the physical facts related, or the testimony of any other witness. We are of the opinion that the allegations of her petition as to this are unsustained, not only by any other proof offered, but, on the contrary, certain parts of her own testimony tend to discredit and render improbable the accuracy and truth of her statement as to the way and circumstances under which her injury occurred.

Her testimony as to this point was that she had finished washing the transom, and was at the time "standing with one foot on the ladder and the other foot about to step on the floor," when the appellant, Mrs. Iseman, who was then standing behind her, holding the ladder, heard herself called from downstairs by Mrs. Wilkins, her visitor, when she stated to appellee that "she would go and see what Mrs. Wilkins wanted," and, upon making such statement, withdrew her support from the ladder, which, left thus unsupported, turned and threw ap-

pellee against the door. While perhaps this is not impossible, it is at least improbable that the appellee, "while standing with only one foot on the ladder and the other foot about to step on the floor," would not have had reasonable opportunity to have completed her then act of stepping the short distance from the ladder onto the floor, within the time the appellant required for telling her that she would go and answer the call of Mrs. Wilkins.

There is found not only this inconsistency in her evidence, but the further physical fact of the improbability of the ladder falling at all while appellee occupied such position on it. Not only is appellee's testimony unsupported by any other evidence, and itself unreasonable in part, but it is overwhelmingly contradicted and discredited by that of the appellant and her four other witnesses, who corroborate and support her testimony in all important particulars as to how this accident occurred.

The appellant testifies, concerning this happening of the accident in question, as follows:

"I said to her (the appellee) we will scrub the wainscoting. We had gotten through that and I said to her, 'I am going out and you finish the other end of the bathtub and I will be back in a minute, I want to give my daughter some money to go to the grocery.' I went down stairs and Mrs. Wilkins and my daughter were there. My daughter was upstairs and Mrs. Wilkins started up there and I met her and we went back down stairs together and I was down there about five or ten minutes. When I went out and started down stairs I told Mrs. Hayes to finish the other end of the bathtub, and I said to her, 'Don't climb on this ladder while I am out.' I felt like she was too old to climb on a ladder. We had not used the ladder since dinner and were done with it. After I came back we were to wash the door and I told her to stay off the ladder until I came back."

Appellant further states that at the time appellee fell, not only was she downstairs in the living room, but that her daughter, Mrs. Ware, and a caller, Mrs. Wilkins, were there with her, who, upon their hearing Mrs. Hayes fall in the bathroom, rushed upstairs to her aid, and that she also followed them up; that when she reached the up-

stairs, Mrs. Hayes was lying on the floor, and that upon witnessing appellee's injury she went "all to pieces" and said, "What did you climb on this ladder for? I told you not to do it," and she said, "Don't have a spell, it was all my own fault"; also, she states when Dr. Reddick, whom they had called for Mrs. Hayes, came, Mrs. Hayes talked to him and told him that she did not blame Mrs. Iseman at all, as it was all her fault; and, further, that appellant had told her not to go on the ladder. These statements were made to Dr. Reddick by Mrs. Hayes in the presence of appellant and the other witnesses.

The appellant is corroborated in her testimony by Mrs. Wilkins, who was at the time present, and who, when introduced as a witness, stated:

"I called Mrs. Iseman from down stairs and discovered that she was up stairs and I walked about half way up stairs and she said, 'Wait a minute, Mrs. Wilkins, I am coming down stairs.' She turned around and said to Mrs. Hayes, 'You wash the baseboard of the bathroom but don't get on that ladder until I get back,' and Mrs. Iseman came down stairs and we talked about 5 or 10 minutes, and about that time we heard something fall, and I ran up stairs first, and Mrs. Iseman hollered and said, "Oh, I believe she has fallen; I told her not to get on that ladder.' "

That later, when Mrs. Iseman came upstairs and screamed upon seeing the appellee's injury, Mrs. Hayes said:

"Don't take on so Mrs. Iseman and make yourself sick, it was all my fault."

Substantially this same report of the occurrence and corroborating appellant's account of it, was given by Mrs. Mary Ware, the daughter of the appellant. Also Dr. Reddick, a disinterested witness and physician of high standing in Paducah, testified that he was called to the appellant's home, upon the occasion of the appellee's injury, where he found Mrs. Hayes in the presence of the appellant and Mrs. Wilkins, and who there and at such time repeatedly stated to him that her injuries received in falling from the ladder were not caused by the fault of Mrs. Iseman, but were due to her own fault, as Mrs.

Iseman had told her not to go upon the ladder while she was gone.

This admission of appellee, that her accident was due to her own fault and not that of Mrs. Iseman, also was made by Mrs. Hayes to the appellant, upon a later occasion, when appellee was visiting her and when in the presence of Noel Jones, a colored woman, who so testified.

It would thus, by the clear weight of this evidence of the appellant and her four named supporting witnesses, appear that the appellant was not present in the bathroom with Mrs. Hayes at the time she fell from the ladder, as testified to by Mrs. Hayes. Also, it would most strongly appear that the appellee did not immediately fall from the stepladder, upon its being released by Mrs. Iseman, as testified by Mrs. Hayes, but that her fall occurred some five or ten minutes after Mrs. Iseman had left Mrs. Hayes in the bathroom, and when she was down stairs talking with Mrs. Wilkins and her daughter, Mrs. Ware.

Thus, from the great weight of the evidence, it appears, almost beyond a doubt, that Mrs. Hayes fell from the ladder while the appellant, daughter and Mrs. Wilkins were downstairs, as stated, from which, if true, it is evident that she could not have fallen immediately, or at all, upon the ladder being released by Mrs. Iseman, and while in her presence in the bathroom, as she alleges occurred and which caused the ladder to turn and throw her.

Having thus carefully read and considered the entire evidence afforded by the record, we are led to conclude that the verdict for the plaintiff, rendered by the jury herein upon the single and unsupported testimony of appellee, charging appellant with negligence, causing her injury, and especially, when that evidence is so greatly overwhelmed, denied and contradicted by appellant and her four witnesses, corroborating and supporting her in all the material facts of her testimony, as well as the physical facts discussed, is clearly and palpably against the evidence, and that a reversal must be ordered, as was upon like grounds held by this court in the case of Louisville & Nashville Railroad Co. v. Baker's Administrator, 183 Ky. 795, 210 S. W. 674, 676, wherein this court

declared the rule of law herein applicable to be as follows:

"Under subsection 6 of section 340 of the Code, a new trial is authorized when the verdict or decision is not sustained by sufficient evidence. Under this section the court will not set aside a verdict merely because it is against the preponderance or weight of the evidence, nor because of the numerical superiority of witnesses. The verdict must be flagrantly against the weight of the evidence. But when such a state of case is presented it is not only the right, but the duty, of the court to reverse and remand for a new trial. Continental Ins. Co. of N. Y. v. Hargrove, 131 Ky. 837, 116 S. W. 256; Id., 143 Ky. 400, 136 S. W. 616; Vincent, Etc. v. Willis 82 S. W. 583, 26 Ky. Law Rep. 842; C. & O. Ry. Co. et al. v. Johnson, 145 Ky. 481, 140 S. W. 687; Id., 151 Ky. 809, 152 S. W. 962; I. C. R. R. Co. v. Long, 146 Ky. 170, 142 S. W. 212; C. N. O. & T. P. R. Co. v. Martin, 146 Ky. 260, 142 S. W. 410; Id., 154 Ky. 348, 157 S. W. 710; Wickliffe Mfg. Co. v. Wilson, 169 Ky. 468, 184 S. W. 386; North Jellico Coal Co. v. Stewart, 173 Ky. 745, 191 S. W. 451."

Instruction No. 2 herein given by the court, and complained of as prejudicial to appellant, is as follows:

"If the jury shall find for the plaintiff they will award her such sum in damages as they may determine from the evidence she has sustained, if any there be for physical pain, and mental anguish if any of either, any permanent impairment of plaintiff's power to earn money not exceeding the sum of Five Thousand Dollars ($5,000.00); for lost time, if any, not exceeding One Hundred Fifty Dollars ($150.00), but in all not to exceed the sum and amount of Five Thousand One Hundred Fifty Dollars ($5,150.00)."

Appellant objects to this instruction as erroneous and prejudicial, upon the grounds that it both assumed certain facts and also that it does not properly submit to the jury the measure of recovery by failing to limit the jury's award, if any, to such sum as would "fairly and reasonably compensate her for the physical and mental suffering, if any or either, and her loss of time, if any,

and for the permanent impairment, if any, of her ability to earn money, that may have directly resulted to appellee from her injury, if they were caused by the negligence of appellant.''

While the award made by the jury to appellee of $1,000, as damages, found sustained by her loss of time, suffering, and pain and permanent injury suffered by appellee, induces us to believe no confusion of the jury was caused, or it misled, by the instruction as given, as the low amount of the award makes very satisfactory answer to and disposes of the claim that it could have been made by the jury as other than as compensatory and in nowise as punitive damages, or as given under the influence of prejudice or passion, still we are of the opinion that appellant's criticism of the instruction is not without merit, and this court having repeatedly directed and approved a proper form of instruction to be given the jury upon the measure of damages in personal injury cases of this nature, we are constrained to direct, as affording the jury a better criterion and safer guide as to proper measure of damages, that such approved form of instruction should be employed by the trial court; and it is therefore directed that it will upon the next trial of this action, the pleadings remaining the same, give, in lieu of instruction No. 2, the following instruction, as laid down and approved by this court in the cases of South Covington & C. St. Ry. Co. v. Nelson, 89 S. W. 200, 28 Ky. Law Rep. 287; Paducah Traction Co. v. Burradell, 104 S. W. 709, 31 Ky. Law Rep. 1052; Cross v. I. C. Ry. Co., 110 S. W. 290, 33 Ky. Law Rep. 432; Chesapeake & O. Ry. Co. v. Crank, 108 S. W. 276, 32 Ky. Law Rep. 1202, and many others, and which is:

"If they find for the plaintiff, the jury should allow her such a sum in damages as they believe from the evidence will fairly and reasonably compensate her for her physical and mental suffering, if any or either, for her loss of time, if any, and for the permanent impairment, if any, of her ability to earn money, that may have directly resulted to plaintiff from her injuries, if they were caused by the negligence of defendant, but not exceeding in all the sum of $5,150.00, the amount claimed in her petition."

And as the petition alleges loss of time, as a result of the injury, as well as permanent impairment of her

314

power to earn money, the court will add to this instruction, given the jury as to the measure of damages, the further qualifying instruction and explanation that the allowance, if any, for permanent impairment of her power to earn money should begin only from the time when the allowance, if any, for time lost ended. Illinois Cent. R. Co. v. Williams, 163 Ky. 831, 174 S. W. 741; Blue Grass Traction Co. v. Ingles, 140 Ky. 488, 131 S. W. 278; Main Jellico Mountain Coal Co. v. Young, 160 Ky. 397, 169 S. W. 841.

All other questions presented by appellant, on motion and grounds for a new trial, which have not in this opinion been considered or disposed of, are expressly reserved for later consideration, and are not by this opinion determined.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial and such further proceedings as may be consistent with this opinion.