## Trimble v. Baker.

(Decided May 6, 1938.)

B. J. BETHURUM and CHARLES N. HOBSON for appellant.. WESLEY & SON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This action was brought on behalf of Thelma Trimble, by her father, Brutus Trimble, as next friend, to recover damages for personal injuries in the amount. of $2,050.

Upon trial of the case, the jury returned a verdict finding for the defendant, upon which judgment was accordingly entered.

This appeal results, seeking a new trial upon the grounds (1) that the verdict is against the evidence and (2) because of errors in the instructions.

The material facts are that on May 28, 1936, the appellant, Thelma Trimble, was riding as the guest of Ruth Trimble Chaney in the automobile she was then driving westwardly on Mt. Vernon street, Somerset,. Ky., and approaching the point of its intersection by College street, which crosses it in a north and south direction. At the same time plaintiff was approaching this intersection on Mt. Vernon street, the appellee, Clate Baker (defendant below), was also approaching it as he drove his truck southwardly over College street, at or near to said intersection, when, there turning eastwardly onto Mt. Vernon street, a collision occurred between the car in which appellant was riding

and Baker's truck, resulting in her sustaining the injuries out of which this action arises, seeking recovery of damages therefor as having been caused by Baker's alleged negligent operation of his truck, or by his violation of the city's traffic regulations when driving into and across the street intersection.

It is stipulated that by the provisions of an ordinance of the city of Somerset, then in effect, Mt. Vernon street is designated a thoroughfare of the importance of a boulevard, that its traffic should have the right of way at the intersection over that passing north and south on College street, and that all vehicles so approaching the intersection, upon arriving at it, should come to a dead stop and not endeavor to enter upon or cross said Mt. Vernon street until the operators of the stopped vehicles had first ascertained if it were clear of all passing or approaching traffic and that they might safely enter upon the intersection.

The testimony of the appellant and her witnesses, as to the facts and circumstances under which the car and truck were, at the time of the collision, being driven, is that the car in which plaintiff was riding was then being driven by its owner, Mrs. Chaney, westwardly, at an ordinary rate of speed (not in excess of 20 miles per hour) on the north side, or their right side, of Mt. Vernon street, as they were approaching its nearby intersection with College street, and that they were some 200 yards therefrom when the appellant saw that the truck of the defendant (Baker) was then also approaching the intersection, as he was driving it south on College street, on his left or the east side thereof, and that, upon reaching the intersection, he turned immediately eastward onto the north side of Mt. Vernon street, where he continued to drive eastwardly, in the direction plaintiff's car was approaching and on her side of the street; that, when suddenly thus confronted by the defendant and in an effort to avoid colliding with his truck, Mrs. Chaney, the driver of the car in which appellant was riding, turned it to her left or the south side of Mt. Vernon street, whereupon, at the same time, Baker also turned his truck away from the north to the south side of Mt. Vernon street, without giving any warning of his change of course or that he was going to make such turn; that the effect of these successive and negligent maneuverings of the truck by the defendant, in violation of all traffic regulations, so

misled the driver of the car, in its emergency operation, as to cause and bring about a head-on collision between the car and truck at or near the intersection the defendant had wrongfully entered.

Further, they state that the parties involved in this collision were familiar with the rules governing traffic, i. e., the relative rights and duties of drivers of vehicles, at this intersection, making it the duty of the operators of vehicles traveling over College street to stop and look, so as to allow the traffic there or approaching on Mt. Vernon street to pass before they entered it, and, as if in recognition of such traffic rule, the defendant testifies that he did stop, look, and wait when he arrived at the intersection upon this occasion.

It appears undisputed, and in fact it is not an issue, that the appellant in this collision did sustain severe injuries and cuts upon her head and face, which was permanently scarred, for which, by this action, she seeks recovery of damages.

Several of appellant's witnesses, including Ruth Trimble Chaney, testify that, about an hour after the accident, they heard a conversation had between the appellee, Baker, and the appellant's father, in which Mr. Baker said to him, "I will gladly settle the damage caused by this collision and the injury. I do not want to take it into court." Also, her father, Mr. Trimble, testified as to this, that while he did not see the collision in which appellant was injured, he, shortly afterwards and on the same day, did see Mr. Baker, who stated to him, "I want to do what is right in this case and will gladly settle with you for the damage I have done. I do not want the case taken to court. I will be back in Somerset in a day or two after Decoration Day, May 30, and will come around and settle with you at that time."

Further, the chief of police of the city, J. B. Jasper, also, when testifying for the plaintiff, stated that he had arrived at this street intersection where the collision occurred between the truck and the car within two or three minutes after it happened, when he at once made a thorough investigation of the facts of the situation, with a view to learning who of the parties involved was at fault in bringing about the collision; that, in doing this, he went to the rear end of each vehicle and traced therefrom for several yards the tire

marks made on the street surface by the said vehicles, which tracks were physical facts which showed just how the driver of each had approached the point of their collision; that he found the tracks of the truck, driven by the defendant, led back to the east side of College street, and within 3 or 4 feet of the curb, showing that Baker had entered Mt. Vernon street from his left-hand side of College street as he drove south thereover, to the intersection, where he turned immediately east on Mt. Vernon street and ran directly into the car driven by Ruth Trimble Chaney; that the marks leading east from where the rear wheels of the Trimble car were standing after the collision led back to the north side of East Mt. Vernon street, showing that her car, when approaching the intersection, was traveling west on Mt. Vernon street and that she was, at such time, occupying her right side of the "through" street, when Baker's truck entered it (Mt. Vernon street) and started east thereon; that, when Baker did this, Mrs. Chaney, thus confronted, started to pull her car over to her left side of the street to avoid the threatened collision, but that, about that same time, Baker also pulled his truck over to his right side of the street, where they met and the collision occurred; further, he stated that the Trimble car, going west on Mt. Vernon street, had the right of way over vehicles traveling on College street, and that it was the duty of Baker to stop when he arrived at the intersection of College and Mt. Vernon streets; and that the place, at which he found the cars, just after their frontal collision, showed that both cars were about even with the east side of the intersection of College and Mt. Vernon streets, when they collided there.

On the other hand, the testimony of the defendant, Baker, is that he was upon this occasion in a "pick up" truck with his wife and coming out on College street, southwardly towards Mt. Vernon street; that he was at the time traveling on his right side of College street and, upon reaching the place of the intersection, that he stopped his truck and looked each way on Mt. Vernon street, when, seeing no vehicle approaching from either direction, he drove his truck across the intersection and to the east on Mt. Vernon street, keeping on his right or the extreme south side of Mt. Vernon St., within about 1½ feet from the curb; that, as he was crossing the intersection, he saw the car in which plain-

tiff was riding some 200 yards away, coming west on the north side of the street towards him at a speed of more than 40 miles an hour; that, when the car had come to within 30 or 40 yards of his truck, it suddenly swerved from its driver's right over to the left and came over to his or the south side of the street, when appellant's car struck his truck directly in front as he was slowly driving some 30 or 40 feet east of and beyond the College street intersection; that Mt. Vernon street was clear and unobstructed at the time, with no other traffic near to prevent her from seeing and passing the truck in perfect safety; that he was then traveling about 10 miles an hour as close to the curb as he could get, and had passed the center of Mt. Vernon street before plaintiff's car came into sight; that the driver of the car seemed to have lost control of it; further, Baker denied that he had told Brutus Trimble, or other of appellant's witnesses, that "I wanted to do what was right, or that I would settle for the damages I had done," or made any such statement in substance or at all, but did then say to him that he didn't want to go into court and would try to settle the matter out of court.

Also, appellant was corroborated by the testimony of both his witnesses, Estell Jones and Sam Muse, in his account and theory of how the accident was caused and occurred, and as to how and where he was driving, with relation to the street intersection, just before and at the time of the collision.

Upon the conclusion of the evidence and after receiving the instructions of the court, the jury retired and found a verdict in favor of the defendant, upon which judgment was accordingly entered.

Challenging the propriety of this judgment, this appeal is prosecuted, asking its reversal upon the grounds (1) that the "verdict is against the evidence, in that it is contrary to the physical facts" and (2) because of errors alleged made in the instructions.

Taking up now the consideration of the first of these grounds urged for a reversal that "the verdict is against the evidence and is contrary to the physical facts," such contention may be summarily disposed of with the statement that the question of what were the physical facts as to the place and conditions under which this admitted collision of the car and truck oc-

curred is not established, but is itself a disputed fact put in issue by the very conflicting evidence of the parties on this point.

It will be noted, from the brief statement above given of the evidence as to the pertinent facts of the case, that according to the appellants' testimony the collision was caused by appellee, in that he drove his truck down College street and into the intersection without stopping, and there immediately turned eastwardly down Mt. Vernon street and into the path of her car which was then approaching the intersection on her right side of the street; also, that the chief of police, when testifying as her witness, though admitting that he was not present when the collision occurred, states that his investigation made upon his arrival of the tracks of the truck and car left upon the street showed the physical fact to be that the car and truck were within the limits of the street intersection at the time they collided. As opposed to and contradictory of such claim made as to what were the physical facts relative to the position of the cars when colliding, there is the testimony of the defendant, who denies that the collision of the cars occurred when they were within the intersection. He states that it occurred when the truck was some 30 to 40 feet east of the intersection and when the appellee was there driving eastwardly on his right-hand side of Mt. Vernon street. In this version as to the cause and place of the collision he is corroborated by the testimony of his witnesses, Estell Jones and Sam Muse, who testified that they were present and near the intersection when this collision occurred and that it did not take place within the intersection, as claimed by appellant, but under the circumstances and conditions claimed and testified to by the appellee, to the effect that it occurred when he had driven beyond the intersection of the streets and was some 30 or 40 feet distant therefrom and driving on the south side of Mt. Vernon street near its curbing, when the driver of appellant's car, then approaching from the east and some distance ahead of him, suddenly turned from her right-hand side of the street, upon which she was driving, and swerved over across the road into a head-on collision there with his truck.

Such being the conflicting character of the evidence upon which the case was submitted to the jury, the determination of the question of whose fault caused the

collision and as to what were the physical facts found at the scene of the collision, urged as giving answer to this question, was one resting exclusively with the jury. Further, the evidence introduced by each of the parties to maintain their respective sides of the issues joined was quite ample and sufficient to support the jury's verdict, whether rendered in favor of the one or the other of the litigants.

Adverting now to the second of appellant's grounds of objections, whereby she assails the propriety of the instructions given: She contends that the first of the instructions is erroneous in that, while defining the duties owed by the defendant, Baker, to the appellant at the time he approached with his truck this intersection of College and Mt. Vernon streets, (those traveling over Mt. Vernon street having been given the right of way by the city ordinance), it failed to enumerate therein the further duty owed by Baker to appellant, of stopping at the point of intersection until he could ascertain that Mt. Vernon street was clear of traffic, traveling either east or west, before proceeding to drive into the intersection. Appellant contends that the court having failed to so instruct the jury, it should have given instruction "a" proffered by appellant, wherein the jury was told that such was the truck driver's duty to stop at the street intersection upon this occasion under the rule announced in the case of Lindig v. Breen, 268 Ky. 153, 103 S. W. (2d) 941, 942, wherein was approved the following instruction given the jury:

> "If the jury believe from the evidence that there was a stop sign on Dumesnil Street east of its intersection with Twenty-Sixth Street, then it was his further duty to bring his truck to a complete stop before entering Twenty-Sixth Street, and not to enter Twenty-Sixth Street until he could do so with reasonable safety to north and southbound traffic on Twenty-Sixth Street."

The court, in its opinion, rendered in that case, said that "the instruction was predicated solely on the presence of the stop sign" that "the regulation of traffic on its streets by a city is a valid exercise of the police power"; and that the city was "empowered by ordinance to establish and maintain suitable signs or markings requiring operators to bring vehicles to a complete stop at any intersection or any other place where such regulation is required for public safety."

While in the instant case it is shown a like provision was made by an ordinance of the city of Somerset, making it the duty of drivers of motor vehicles, when on College street, and approaching its intersection with Mt. Vernon street, to stop at the intersection to ascertain if Mt. Vernon street was clear of traffic before entering within the intersection, it is not here shown, as it was in the Lindig Case, that any stop sign was placed at this street intersection here involved, so as to present the question squarely as to whether or not, in the event there was no stop sign at this intersection, the court was none the less required to tell the jury that it was the duty of the truck driver, when approaching this intersection, to stop before entering thereon, by reason of such regulatory provisions of the ordinance alone.

However, in view of the conclusion we have reached that instructions Nos. 2 and 3, as here given by the court, were erroneous and for which error the judgment appealed from will have to be reversed, we deem it unnecessary to decide the question presented by the instruction hereinabove discussed.

By the second of the court's instructions the jury was told, in substance, that it was the duty of the driver of the car in which plaintiff was at the time a guest to drive at a rate of speed not to exceed 20 miles an hour, and that, if the car were then being driven faster, it was the duty of plaintiff, as a passenger therein, to protest against the rate of speed, and, if unheeded, to have the driver stop the car and get out of it; and that, if there was a failure on plaintiff's part to do this, such failure constituted negligence on her part contributing to the cause of the collision and resulting injuries, but for which the collision would not have happened, and that in such event the jury should find for the defendant.

We deem this instruction as given was here improper, for the reason that it clearly appears that the time was too brief between her discovering the presence of the defendant and his truck a short distance ahead at the intersection and her reaching the intersection to afford a reasonable opportunity for plaintiff to protest against the rate of speed at which the car was being driven, and, if the protest were not heeded, to ask that the car be stopped so she might get out of it.

Assuming that the intervening distance between the point on Mt. Vernon street, where she discovered the presence of appellee's truck and the intersection was 200 yards, it would have taken the car but 20 seconds, if it was traveling at the rate of 20 miles an hour, and but one-half of such time if the car was then traveling, as stated by appellee, at the rate of 40 miles an hour, to reach the intersection.

Upon this point, in the case of Cox's Adm'r v. Cincinnati N. O. & T. P. Railway Company, 238 Ky. 312, 37 S. W. (2d) 859, 863, we said:

"If S. T. Cox was guilty of negligence and Zelpha Cox had knowledge of the facts constituting his negligence, if any on his part, for sufficient time prior to the accident to have enabled her to take requisite precautionary steps within time to have avoided the collision, and she failed to do so, in that event his negligence may be imputed to her. But if such contributory negligence on his part, if any, arose suddenly without an opportunity on her part to exercise ordinary care to avoid its consequences and to provide against it for her own safety, in this event his contributory negligence cannot be imputed to her."

And again, to the same effect, was the language of the opinion in Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363, 364, as follows:

"We are aware that 'back seat driving' is always irritating, often confusing, and seldom helpful, and are not willing to give judicial sanction to that practice under circumstances like those here presented."

For like reasons, it is here our view that it was error to impose upon appellant the duty of protesting against the rate of speed at which the car was being driven, and, if unheeded, to have the driver stop the car, so that she might get out of it, where the very statement of the circumstances of the case shows that she did not have sufficient time, after discovering the danger ahead, to do the things required of her by instruction No. 2.

We are further of the opinion that the court's instruction No. 3 is erroneous, as improperly instructing the jury upon the measure of damages. By this in-

struction the jury was told that "if you find for the plaintiff herein, you will award to her such a sum in damages as will reasonably compensate her for injuries sustained, if any, not to exceed the sum of $2,000.00, the amount sued for," etc.

In the case of Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110, 114, 85 A. L. R. 996, the following instruction, giving the measure of damages recoverable in personal injury cases, was quoted with approval:

"If they find for the plaintiff, the jury should allow her such a sum in damages as they believe from the evidence will fairly and reasonably compensate her for her physical and mental suffering, if any or either, for her loss of time, if any, and for the permanent impairment, if any, of her ability to earn money, that may have directly resulted to plaintiff from her injuries, if they were caused by the negligence of defendant, but not exceeding in all the sum of * * * the amount claimed in her petition."

See, also, Hobson's Instructions to Juries, sec. 215, page 227, and the notes thereto, and Colonial Coal & Coke Company v. Hobson, 208 Ky. 612, 271 S. W. 680, stating this rule as above given, together with a very comprehensive list of authorities sustaining same.

In view of our conclusion that the court's instructions Nos. 2 and 3 as given were improper and erroneous in the respects hereinabove indicated, and that said errors therein were of prejudicial effect upon the substantial rights of appellant, the judgment of the court is for such reason reversed, with the direction to grant a new trial and for further proceedings consistent with this opinion.